Randolph et al. vs. McCain, Ad., etc.

RANDOLPH et al. vs. McCAIN, Ad., etc.

1. PRACTICE IN SUPREME COURT: *Pleadings found in bill of exceptions not noticed.*
A copy, in a bill of exceptions, of a paper, said to be an answer in the case, is out of place there, and will not be noticed in the supreme court.

2. RECORD ENTRIES: *Imperfect, when sufficient.*
When an imperfect entry upon the record plainly shows without doubt, what the court intended to do, the effect intended should be given to it.

3. INSTRUCTIONS: *Intimation of court's opinion of the evidence, improper.*
An instruction should not be given that intimates to the jury the opinion of the court as to the weight of the evidence.

4. LANDLORD'S ATTACHMENT: *What removal of crop sufficient for.*
The actual removal by the tenant of any part of the crop, even for honest purposes, without consent of the landlord, will justify the attaching of the crop, although enough remains upon the premises to satisfy the rent, and the tenant does not intend to remove the crop in bulk.

5. INSTRUCTIONS: *Attachment.*
An instruction which denounces the landlord's attachment, a remedy given by the legislature, as harsh, should not be given.

6. WITNESS: *Party as, put under rule.*
A party who becomes a witness in a suit may be put under rule, as other witnesses.

APPEAL from *Jefferson* Circuit Court in Chancery.
Hon. J. A. WILLIAMS, Circuit Judge.
*M. L. Jones,* for appellant.
*Pindall, McCain, contra.*

EAKIN, J. Susan R. Kimbrough, executrix of Berkly
Kimbrough, sued Geo. C. Randolph, in Lincoln county, on
the sixth of December, 1876, for the rent of a plantation
for that year. By the contract he was to pay $3,000; one-
half on the first of November, 1876, the balance on the
first of January, 1877. She admitted the payment of $500,
and it was proven, on the trial, that he had paid about half,
at the time suit was brought. She asserted a lien upon the
crop of cotton and corn; and filed, with her complaint, an
affidavit, stating that he had removed a portion of the crop
without her consent, and was about to remove the re-
mainder without paying rent; that her claim was for rent,
and unpaid; and that she had a lien. She filed a bond in
the sum of $5,000, conditioned to be void if she should
pay to defendant all damages that should be assessed against
her, if the order for attachment were found to be wrong-
fully obtained; and if she should prove her demand and
her lien in a trial at law, or should pay such damages as
might be adjudged against her.

A writ of attachment issued, and was levied on some
cotton and corn. The defendant, after three days, gave a
bond, with sureties, conditioned to perform the judgment
of the court; and was allowed to take the property.

It seems, although it is nowhere found in the transcript,
that defendant filed an affidavit, contesting the truth of the
grounds laid for an attachment, by the plaintiff in her affi-
davit. The parties treated the case as if this matter were
in issue, and a jury was impanneled to try it, at the April

term, 1877. They found, by their verdict, that the attachment had been wrongfully sued out, and that defendant had sustained damages to the extent of $700; whereupon, it was ordered by the court that he recover of the plaintiff, as executrix, that sum, with costs. She moved for a new trial, for causes assigned, and to set the verdict aside. Upon this, the record shows the following order, of the date of thirtieth of April, 1877: "Come now the parties, and the point of law, arising on the motion for a new trial, being heard, and being supported by affidavits, is by the court granted, and thereupon, on motion, it is ordered that this cause be continued."

Afterwards, on the application of the defendant, and two of his sureties in the retaining bond, a change of venue was granted by the judge, in vacation, to Jefferson county. There, at the fall term, the death of the plaintiff was suggested, and McCain, as administrator *de bonis non*, was substituted; and divers motions were overruled, which had been made by the defendant, to quash the writ, return, and proceedings. Concerning these, it may be sufficient to say, in passing, that they were of a technical character, and that the proceedings under the writ seem to have been substantially correct, and in accordance with law. No error, with regard to these points, is urged in argument.

The court also overruled a motion of defendant to dismiss the suit, because there had been a trial and judgment, *and no order granting a new trial.*

The record shows no answer to the complaint. We find in the *bill of exceptions*, however, a copy of a paper said to have been put in as an answer, amounting to a denial of the debt. It is out of place there, and can not be noticed.

A jury was impanneled, however, and the parties went to trial, as if issues had been made up in due form, upon

the merits of the complaint, and the truth of the grounds for an attachment. They returned a verdict in favor of the plaintiff, finding that the attachment had been rightfully issued, and that he was entitled to recover on the contract a balance of $1,404. Judgment was rendered, accordingly for that amount, against defendant and the sureties on his bond.

He moved for a new trial, upon divers grounds. Those important to be noticed may be grouped as follows:

1. Because the verdict was contrary to the law and the evidence.

2. Error in giving and refusing instructions.

3. Because the court refused to dismiss the cause on change of venue, for the reason that the original judgment in the Lincoln circuit court had never been set aside.

4. Because of newly discovered evidence.

5. Because the court, on plaintiff's motion, put defendant under the rule, as a witness.

The motion was overruled, and defendant appealed.

This suit was brought under *secs. 4101-2-3 and 4, of Gantt's Digest*, prescribing the mode of enforcing the landlord's lien for rent. The specific remedy is given in two cases: First, when the tenant is about to remove the crop from the premises without paying the rent; and, second, when he has removed it without the consent of the landlord. The rent need not be due at the commencement of the suit, but the trial must be stayed until it becomes so. The plaintiff is required to make affidavit of one of the facts above stated, the amount that is or will be due for rent, and that he has a lien on the crop for such rent. He must also file a bond in double the amount of his claim, with sufficient surety, conditioned to " prove his debt or demand, and his lien, in a trial at law ; or that he will pay

such damages as shall be adjudged against him." The general attachment law (*sec. 391*) provides for " a bond to the effect that the plaintiff shall pay to the defendant all damages which he may sustain by reason of the attachment, if the order is wrongfully obtained."

The plaintiff's affidavit and bond contained all that was essential, and more than was necessary to sustain the landlord's specific attachment. The defendant's bond was filed under *sec. 416*, by which the attachment was discharged, and he obtained restitution of the property. He was allowed, nevertheless, to put in issue the truth of the grounds of attachment, and had the benefit of it on trial. It is not easy to see the grounds of his complaint on this point. The court is, therefore, not required now to decide whether or not a defendant, after giving a discharging bond under *sec. 416*, may afterwards question the grounds upon which the attachment issued, and have damages for wrongful attachment assessed in the action. There was sufficient evidence to sustain the finding of the jury on both, or either, of the grounds alleged for the attachment. It is true that the judgment upon the first verdict was not formally set aside, and a new trial ordered. That should have been done in plain, direct terms. But parties should not lose their rights, nor business be delayed, by the inexpertness, or inattention, of the clerks in making entries, when it can be seen, without any doubt, what the court meant to do. The motion was to set aside the first verdict, and to have a new trial. This was ordered to be granted, and the cause continued. The formal entry should have followed, as a matter of course; and having the motion before it to correct by, the Jefferson court did right to give the effect intended to the order of the Lincoln court, and proceed with a new trial. It was consistent with the order granting the motion. To

have refused to proceed, would have been in contravention of it.

The court, for the plaintiff, instructed the jury, in effect, that if they believed defendant was indebted for rent, and that he had removed from the place any portion of the crop without Mrs. Kimbrough's consent, although other portions may have been removed with her consent; or although enough may have been left on the place to pay the 'rent, she had the right to attach; and they might find for the plaintiff, although the rent was not due when the attachment issued. For the defendant, it instructed, that the plaintiff must prove every material allegation in her affidavit, by a preponderance of evidence; and that if defendant had her permission generally to ship cotton to pay for supplies, he might ship in pursuance of that permission without being liable to attachment, unless at the time the attachment issued he was about to remove the crop from the place without paying the rent. Also, that they should find for defendant if they believed that, after the payment of the first installment of rent, no cotton was removed from the place, unless they should find further, that defendant was about to remove the crop without paying rent. Also, that the permission to move any part of the crop might be proved by parol, outside of the written instrument. They were also advised that they should not take it as a circumstance against defendant, if he shipped cotton away by night, or on Sunday, in order to meet a boat, if such was the custom of planters in his section. Also, on the question of damages, they were instructed that if they found the writ of attachment had been wrongfully sued out, they should assess against the plaintiff such actual damages as may be proven to their satisfaction; that the matter of damages and the propriety of the attachment were the only

matters for them to consider, except that if they found the attachment to have been just and on proper grounds, they might find for the plaintiff whatever might be due on the rent.

Passing over instructions refused for the plaintiff, the court refused to instruct for defendant as follows:

"4. If the jury believe from the evidence that the rent was payable in two installments of fifteen hundred dollars each, payable, respectively, the first of November, 1876, and the first of January, 1877; and that the first payment was promptly made without attachment, and there was sufficient corn and cotton left upon the premises to pay the second payment, and that defendant was not making any attempt to move the said crops, and that said second payment was not due at the time of the attachment; these are circumstances that may *well be considered* by the jury, as to whether the attachment in this case was without just grounds."

This was properly refused, not only because the matters stated would not have been sufficient to bar the right of attachment, but the instruction, if given, would have intimated to the jury the opinion of the court as to the weight of evidence. The actual removal of *any part* of the crop, even for honest purposes, and after the payment of the first installment, without the consent of plaintiff, would justify the attachment, although enough might have been left to satisfy her, and defendant did not intend to remove the crop in bulk. The statute does not require landlords to rely upon the good faith of tenants until the removals of the crop touch the quick, and render the security questionable. They must not remove *any*, without consent. A higher public policy is involved in encouraging landlords to let their lands to tenants who swell the

annual products, and thus add to the wealth of the state. This is best subserved, in the long run, by securing to owners the rents for which they contract, and prohibiting tenants from trifling with their security. This reacts, also, for the benefit of tenants generally, tending, by competition of landowners, to reduce the rates of rental.

The court, also, refused to instruct for defendant:

" 9. Attachment is a remedy that is harsh in its nature, and when resorted to, upon any grounds stated in the affidavit upon which it is founded; and such affidavit is controverted by defendant's affidavit, the proof, to sustain the attachment, should convince the jury, over and against the testimony of the defendant, that the attachment was rightful and necessary, or the jury will find for defendant."

The court properly declined to denounce, to the jury, as *harsh*, a remedy given by the legislature, and prompted by sound views of public policy. The province of the jury is to find facts, and apply to them the law, as given by the court. The courts, themselves, in determining points of law, and considering the scope and intention of statutes, and what may be within their equities, and general policy, may look to their bearing and consequences, for the purpose, only, of aiding their judgment of legislative intent; but it is improper in them to express to juries their opinions of legislative action, whether harsh or beneficent. Such expressions, with average juries, are very apt to create an unfavorable bearing against the party claiming under a statute, and should be avoided, whether the subject-matter be landlords' liens, usury, or limitation. Juries have nothing to do with the harshness of laws. Besides, the instruction was erroneous. The defendant's affidavit, denying the truth of the matters alleged as grounds of attachment, did not have the effect of an old answer in

chancery. It simply made an issue, like a plea. The *onus* was on the plaintiff, as the jury were elsewhere advised; but no more weight was due to the testimony of the defendant, than to that of plaintiff, or any other witness. The jury were free to judge, from all the testimony, whether the case was made out.

. At common law, the judge presiding might, in his discretion, upon the application of either party, direct the witnesses to be examined separately, and kept from hearing the testimony of each other. It is a very important power, which has been rarely abused, if ever. The discretion was vested in the judge, before parties were made competent to testify in their own cases. They may now do so; but if a party should assume the character of a witness, it is not unreasonable to require him to submit to the general rules, established for the more certain elimination of truths from witnesses generally. It would be dangerous to give him, *as a matter of right*, exceptional advantages, when he, of all others, if assailable at all by the temptation to concoct evidence, would have the greatest interest in doing so. I can not find that the courts have established any positive rule upon this subject since parties have been made competent to testify. Mr. Wharton, in his "Law of Evidence," cites *R. v. Newman, 3 C. & K.*, *260*, as his authority for saying that, "whoever is yet to be examined, though party or prosecutor, is subject to this rule." In *Clark v. Reese, 35 Cal.*, it was held, though not with regard to this matter of separation, that when the party became a witness in his own behalf he subjected himself to all the rules, regulating the examination and cross-examination of witnesses.

It has been held that the order of exclusion does not extend to an attorney in the cause, if his presence in court be

necessary. See cases cited: *Starkie on Ev., p. 199, 9th ed.* This rests on peculiar grounds. Attorneys are not only officers of the court, essential to the progress of the cause, but officers sworn to fidelity, and entitled to such confidence, whilst in good standing, as would preclude the idea of their lending themselves to such unworthy practices as would be implied by their exclusion. The rule of exception does not seem *positive* as to attorneys even. In England, where counsel manage causes on trial, attorneys are only excepted upon special application, and showing that their attendance was necessary in court to instruct counsel. (*Phil. on Ev., Vol. 2, p. 885, chap. x, sec. 1.*) On the other hand, *Mr. Greenleaf, in a note to sec. 432 of Vol. 1 of his work on Evidence,* cites *Selfe v. Isaacson, 1 F. & F., 194,* as authority for saying that a party has a right to remain in court for the purpose of instructing counsel. He adds, without any citations: "And in those states in which parties are made competent witnesses, *it would seem* that the order of exclusion should not include them; and it is the better practice, as a general rule in those states, so far as it is known to be established, when the witnesses in a case are ordered to withdraw, to except parties from the order."

This may be perhaps accepted as an excellent genera rule for the guidance of circuit judges, in the exercise of their discretion, without going to the length of saying that the right of a party to remain and hear the testimony of others, and then give his own, is a positive legal right. It may be fairly left to the discretion of the judge. There does not appear to have been any detriment to appellant in this case, from his exclusion during the examination of two of plaintiff's witnesses. He was then released from the rule; had ample opportunity to advise himself of their

45

testimony, and did not ask to have them recalled for cross-examination, nor state in his motion for a new trial any points upon which a cross-examination would be desirable. In truth, there is no pretense that his case suffered in any way, and we find no error in the action of the court in this matter.

The plaintiff, Mrs. Kimbrough, testified on the first trial in her own behalf. After her death, upon the second trial, in Jefferson county, a witness, P. D. Taylor, testified as to what she swore on the former trial. Defendant in his motion for a new trial, and as one of the grounds upon which it was asked, says: that, since the last trial, he has discovered that the witness, Taylor, was, at the time of the former trial, a witness in the same case; and was, with other witnesses, put under the rule and could not have heard Mrs. Kimbrough's testimony; that defendant did not know this fact on the last trial until the evidence was closed; nor did he know that Taylor was going to testify; that the witnesses, by whom he could show the facts upon which he relied, to-wit: that Taylor was placed under the rule, were out of the county. The affidavits of others, which he filed with the motion, show that Taylor was a witness at the former trial, and was, with others, placed under the rule, but fail to show affirmatively that Taylor did not actually hear the testimony of Mrs. Kimbrough. He does not allege that the testimony of Taylor, as to Mrs. Kimbrough's evidence, was false.

This was not a showing of any newly-discovered evidence as to the merits of the case, but, taken in its fullest force, it only showed that he might have impeached Taylor's credit if he had known in time of his absence from the court-room at the time Mrs. Kimbrough gave in her testimony. But it does not clearly appear from all the affidavits that

Taylor could not have heard the testimony, notwithstanding the rule. There was a counter-showing that Taylor was an officer of the court, and that it was the unvarying habit of the presiding judge not to require officers of the court to come under the rule for separation, when witnesses in pending trials. It was also shown that many persons were present at the second trial who were also at the first, and whom the defendant might have called. The court did not err in refusing a new trial on this account. ·

Upon the whole case, we find no material error.

Affirm the judgment.