## PARKER vs UNITED STATES.

### Opinion delivered January 14, 1898.

*1.  Larceny—Possession of Stolen Property as  Evidence.*

It was error under an indictment for larceny to allow the pr[o]
secution to show that the defendant was in possession of oth[e]
stolen property.  In order to make such evidence competen[t]
it must be shown that the taking of the stolen property foun[d]
in his possession was about the same time and from about t[h]
same place as the property which the indictment charges hi[m]
with having stolen.

*2.  Larceny—Possession of Stolen Property—Time and Place.*

The court permitted testimony over the objections of the d[e]
fendant concerning the taking of other cattle about the sam[e]
time as those taken for which defendant was indicted, but th[e]
evidence does not fix the taking as being from about the sam[e]
place.  *Held*, Error.

*3.  Hearsay Evidence—Exception.*

As a general rule, hearsay evidence must be objected to specifical[ly]
as such, but where the evidence complained of is certain
hearsay evidence, the court should refuse its admission upon [an]
objection for incompetency.

*4.  Remarks of Counsel.*

Where counsel objects to a part of the argument of opposi[ng]
counsel, but does not have the court rule upon his objections [or]
save any exceptions, this court will not consider such obj[ec]
tions upon appeal.

*5.  Witness—Under rule—Remaining in Court.*

After the rule had been placed upon the witnesses, one of t[he]
witnesses for the prosecution remained in the court room d[ur]
ing the trial.  It was not error for the court to allow su[ch]
witness to testify but the court should, if requested, instru[ct]
the jury that this fact might be taken into consideration [as]
effecting the credibility of the witness.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

Wilson Parker and Dan Shipman appeal from a conviction of larceny.   Reversed.

On the 20th day of October, 1896, an indictment was returned into the United States court for the Southern district of the Indian Territory against the appellants, Wilson Parker and Dan Shipman, charging them jointly with the larceny of two head of cattle, the property of one W. B. Henson.   On April 8, 1897, the case was tried, resulting in verdict of guilty against both defendants.   A motion for a new trial was filed, overruled, and exceptions saved.   The defendants were then duly sentenced.   No objections were made to the form of the indictment, or to the charge of the court.   There are 18 assignments of error.   The first to the ninth, inclusive, and the twelfth and thirteenth, present objections to the admissibility of evidence, and assign errors upon two grounds:   First, that the statements of certain witnesses were hearsay; and, second, because of the incompetency, irrelevancy, and immateriality of certain other evidence.   The eleventh assignment is that the court erred in allowing a certain witness to testify who had not been placed under the rule, but had remained within the hearing of the other witnesses while testifying.   The fifteenth to the eighteenth, inclusive, are that the court erred in overruling defendants' motion for a new trial.   The second assignment, besides setting up the admission of certain incompetent evidence, is that the court erred in not sustaining the defendants' objection to a certain side-bar remark made by the United States attorney during the trial.   Upon the trial the prosecution proved by competent evidence that Henson, the

(40)

prosecuting witness, had two head of cattle stolen from him —one a deep-red cow, branded U, and the other a black heifer, unmarked and unbranded; that these cattle, when taken, were running in the field or pasture of one Misner that the cow had never been recovered, but that the black heifer was afterwards found in the possession of one Arthur James, and from him was recovered by the owner. There was no competent testimony showing how James became possessed of her. It was proven that shortly after the larceny of the cattle the defendants drove and sold to Pollard four head of cattle, two of them resembling the stolen ones. The other two were white cows. Pollard butchered the red cow and one of the white ones. The other white one strayed away, and has never been recovered by him. He sold the black heifer to one Crim Crim testified that he bought the heifer from Pollard, and sold her to one Daube. Neither Daube nor James were placed upon the stand. The only evidence of the identification of this heifer as being the one which the defendant sold to Pollard is the description given of her by Henson the owner, and by Pollard, together with the statement Henson that shortly after he missed his cattle from the range, having learned that Pollard had bought cattle answering the description of his, he went to him, and got from him such information as led him to go to James for the animal, and there found her. The identification of the red cow depended entirely upon the description given of her by the owner and Pollard. Henson, of course, gave an exact description of his stolen cattle, but he had never seen them in the possession of the defendants; but Pollard was unable to accurately describe them. He knew that he had bought of the defendants, shortly after the larceny, together with two others, cattle of the general description of the stolen ones. The heifer had no marks or brands upon her, and did not remember those of the cow. The defendants had

never been seen with the cattle, except at the butcher's pen. The prosecution, to secure a conviction, relied mainly upon the fact that these stolen cattle were, recently after the theft, found in the possession of the defendants ; and, inasmuch as they ( the defendants ) were claiming that the cattle which they had sold to Pollard were different from the stolen ones, the question of identification became the most important one in the case. It was the contested point. If the cattle in the defendants' possession recently after the larceny were the stolen ones, then there was no explanation of their possession. The defendants introduced a number of witnesses who testified to facts tending to show that the heifer had been raised, from a calf, by them, and that they had purchased the cow from a man by the name of Joy, and that she had never been owned by the prosecuting witness, and therefore the cattle which they admitted to have sold to Pollard were not the stolen ones. The case was a close one. The identification of the stolen property was not perfect. It is obvious that under these circumstances it was important for the district attorney, if he had any evidence upon the question of the identification of the stolen cattle, by which he could rebut the evidence of the defense, to introduce it before the jury. For this purpose ( that is, for the purpose of more clearly identifying the cattle sold to Pollard as being the stolen ones ), and to rebut the testimony of the defendants that they had bought one and had raised the other, he was permitted, over the objection of the defendants, to introduce evidence of the fact that two white cows belonging to other owners, found in the possession of the defendants, with the alleged stolen ones, and sold by them to Pollard, were also stolen property, taken from a range at or about the same time that the others were taken from the Risner field. The evidence failed to show that the two sets of cattle were taken from or about the same place. The competency of this testimony is the principal question raised

by the assignments of error.  Conceding that the proof wa[s] sufficient to show  that the two white cattle were found i[n] the possession of  the defendants, that they  were stole[n] property, and that they were  taken at or about the sam[e] time with those alleged  to have  been  stolen, without an[y] evidence that they were taken from or about the same plac[e] was it admissible in this case for any purpose ?

*C. B. Kendrick, J. C. Graham, Henry M. Furman, C. [?] Herbert* and *Jesse H. Hill*, for appellant.

1.   The court erred in allowing  testimony às to othe[r] larcenies of cattle from  other  parties about the time of  th[e] alleged larceny in this case.   Smith vs State, 34 S. W. 108[0] Horton  on  Crim.  Evid. ( 9th  Ed. ),  § 30 ;  Billings  v[s] State, 52 Ark. 308 ; Dove  vs State, 37 Ark. 264 ;  Endaily v[s] State, 39 Ark. 278 ; Oxier vs United States, 1  Ind. Ter.  85[;] 2 Bishop on Crim. Proc. § 750.

2.   The court erred in  allowing testimony that som[e] one had sent the witness word to meet him  and  they woul[d] settle for the cattle.   Barbee vs State, 4 S. W. 584.

*A. C. Cruce* and *G. G. Calmes*, for appellant.

1.   Improper remarks of Counsel before a jury a[re] waived unless objection is made and the ruling upon th[e] same secured from the judge.   St. L. & S. F. R. R. Co.  [?] Browne, 62 Ark. 254.

2.   It is insufficient to  object to  testimony as incor[?] petent, irrelevant and immaterial.   Noonan vs Mining C[o] 122 U. S. 1061 ; 1 Thompson on Trials, § 693, 694.

3.   In a criminal case the question  whether the ve[r] dict was contrary to the evidence will not be tried by the [?] the appellate court, if there is any evidence proper  to go [?]

the jury in support of the verdict. Crumpton vs United States, 138 U. S. 361 ; Walker vs United States, 4 Ark. 88.

4.  Evidence that other property was stolen about the same time and in the same neighborhood, is admissible. Jones vs State, 14 Tex. Ct. App. 94 ; Reed vs State, 54 Ark. 526 ; Oxier vs United States, 1 Ind. Ter. 85.

CLAYTON, J. ( after stating the facts ).  It is unquestionably the law that, while proof of other independent crimes is not admissible to establish the guilt of the defendant of the offense on trial, yet, under certain circumstances, other crimes may be proven.  In cases of larceny, if properly connected, the proof that other stolen property was found in the possession of the defendant, with the property charged to have been stolen, is admissible for either of four purposes:  ( 1 ) To prove felonious intent ; ( 2 ) to prove that the alleged theft was a part of a continuous transaction or scheme of larceny ; ( 3 ) to identify the defendant ; ( 4 ) to identify the stolen property.  In all of these cases, however, it must not only be shown that the defendant was found in possession of the property, and that it was stolen ; but, in addition thereto, it must appear from the proof that there was some connection between it and the property charged in the indictment to have been stolen.  If nothing be shown but that it was in the defendants' possession, then it is inadmissible in every case, because it tends to prove nothing but another, and a separate and independent, larceny.  If, in addition to the fact that the stolen property was found in the possession of the defendant recently after the alleged larceny, it be shown that it had been stolen at or about the same time and place as that charged to have been stolen, then it is admissible in all of the cases, because, under the circumstances of each case, it tends to prove the matter in controversy.  Cases arising under the first proposition are usually those where the taking by the accused of

the alleged stolen property is admitted or clearly established, and the defense is interposed that it was taken under some claim of right, or color of title, or through some mistake or misapprehension. In such case, for the purpose of proving the intent, the prosecution, in rebuttal, may show that, at the time defendant was found with the property in question, he was in possession of other property stolen about the same time and place. Under the second proposition; it may be shown that the alleged stolen property was found in the possession of the defendant, together with a number of other stolen articles, taken at different times and places, not too remote from the time and place of the alleged larceny, not for the purpose of showing that the defendant is a common thief, or of proving an independent crime against him, but as tending to show that the alleged taking was a part of continuous transaction or scheme of larceny, and thus shedding light on the transaction in controversy. Cases arising under the third proposition are generally those where the larceny is admitted or established, and the defendant has been seen with the alleged stolen property, but under such circumstances as that he was not recognized by the witness, as, if he were a stranger to him, or was in disguise, or seen in the night-time ; or, it may occur in cases where no one has seen the defendant in possession of the property alleged to have been stolen, but the circumstances point to his guilt without clearly identifying him. In such case, proof of other stolen property having been found in his possession shortly after the theft, taken about the same time and place, is admissible for the purpose of identifying him. The case of Long vs State, 11 Tex. App. 387, is a good illustration of cases of this kind. In that case the court says: "The court, over the objections of defendant, permitted proof that other stolen cattle were in the bunch with which the cow charged to have been stolen was driven to Seguin. In this there was no error, in view of the peculiar facts of the

case. The most difficult thing on the part of the prosecu-tion was to connect defendant with the possession of the cow charged to have been stolen. To do this, it was nec-essary to describe and identify the herd with which she was when taken to Seguin. To do this, evidence that other cat-tle from the same range were taken at the same time was proper. Some of the state's witnesses were able to iden-tify the herd, but not the cow in question; others, the herd, and stated the fact that the cow charged to have been stolen was with it. The herd being thus identified, the state at-tempted to connect the defendant with it ( the herd ); thus showing his connection with, or possession of, the animal charged to have been stolen. We are of the opinion that, under the circumstances of this case, these facts were ad-missible; but, most evidently, it was the duty of the court to have informed the jury of the purpose for which this evi-dence was admitted. " If the larceny of the alleged stolen property be proven, but the identity of the defendant is in doubt, then, if the fact that other property which had been taken was stolen at the same time and place, and was found in the possession of defendant shortly after the larceny, be established, inferentially he is the man who took it all. In the case of Long vs State, supra, the fact that the defen-dant, shortly after the larceny, was found in possession of other cattle, whether stolen or not, which the unrecognized man was seen driving with the cattle alleged to have been stolen, would have been competent proof for the purpose of identifying him as the man who was seen driving the stolen cattle; but it would not have been competent to have proved that these other cattle were stolen, but for the fact that they were taken from the same range, and at the same time, with those in controversy. Cases arising under the fourth proposition usually occur when the alleged stolen property found in the possession of the defendant is similar to others of that class, but without marks of identification whereby it

may be distinguished, or the brands and marks may have been destroyed, or the property so mutilated as to leave it without means of identification. In such cases, proof that the defendant, recently after the larceny, was in possession of other stolen property, taken about the same time and place, is admissible for the purpose of identifying that which is in controversy, and found in his possession. If the property named in the indictment be shown to have been stolen, but the identity of that found in possession of the defendant, claimed to be the stolen property, is in doubt, then the fact that he was found with other stolen property, which had been taken from or about the same place, and at the same time, would so connect the two articles as that the identification of one would tend to identify the other; but if not taken from or about the same place, although it may have been taken at the same time, and found in the possession of the defendant, it would have no such tendency, and therefore for that purpose the proof of it would be inadmissible. In the case before us the proof tends to show that the two white cows of Adams and Smith were stolen; that they were taken about the same time as those of the prosecuting witness; that they were found in the possession of the defendants, with the cattle charged to have been stolen. But there is no evidence that they were taken from or about the same place. In this the case of the government is fatally defective. As has been shown, the whole purpose of the United States attorney in offering this proof was to identify the Henson cattle. It is not possible that it could have been offered for any other purpose, and therefore, under the circumstances of this case, it was inadmissible.

The next exception raised by the assignment of error which we will notice is: "That the court erred in overruling the objection of the defendants to the admissibility of the testimony of D. B. Henson and S. S. Henson relating to the larceny of the aforesaid white cows." Their testimony in

his connection was as follows: "D. B. Henson.   Q.  Do you
know whether or not there were other cattle stolen out there
rom other parties about that time?   (Objected to as incom-
petent, irrelevant, and immaterial.   Objection overruled; to
which the defendant excepts.).   A.   Yes, sir;  there was a
reat deal of taking of cattle by some one at that time.   By
Mr. Cruce: Unless these men have all lied to me, I can show
hat these two men drove other cattle out there at this time.
The defendant objects to the remarks of the U. S. attorney.)
Q. What other cattle were lost at that time?   (Objected to
s incompetent, irrelevant, and immaterial.   Overruled; to
which the defendant excepts.)   A.   Mr. Tobe Smith lost a
ow, and Mr. Adams lost a cow at the same time.   Q. Do
ou   know   whether   or   not   they   recovered   them?
Objected to as incompetent, irrelevant, and  immaterial.
verruled ;  to which the defendant excepts.)   A.    Mr.
dams got his.     Mr.  Tobe  Smith   never   got   his
ack, though.   Q.   What kind of a cow was Adams' cow?
Objected to as incompetent, irrelevant and  immaterial.
verruled: to which the defendant excepts.)   A.  I suppose
 was a white cow.   Q.   What kind of a cow was the other
he,—Tobe  Smith's?   (Objected  to  as  incompetent, irrele-
ant, and immaterial.   Overruled: to which the defendant
xcepts.)   A.   Tobe Smith told me what kind of a cow his
as; but I think, as well as I can remember, she was a light-
d cow.   He did tell me what her brand was, and all about
   (The defendant objects to the answer.   Overruled.)',
S. S. Henson.   Q.   Do you know whether or not any one
se lost any cattle there at the same time?   (Objected to as
competent, irrelevant, and immaterial.   Objection over-
led: to which the defendant excepts.)   Q.   Who was it
st any?   A.   That gentleman there lost one,—Mr. Adams.
Pointing to a gentleman in the court room.)   Q.   What
nd of a cow did he loose?   A.   I could not tell you.   Q.
d you ever see it?   A.   No, sir.   Q.   Who else lost any?

(Objected to as incompetent, irrelevant, and immaterial Overruled. Exception.) A. Tobe Smith. Q. What kin of a cow was it? A. I don't know. Q. Do you kno whether they got their cows back? A. Mr. Adams got hi back, he told me, yesterday. (Objected to, — what Mr Adams told him. Overruled. Exception.) * * * Q. Ho do you know, Mr. Henson, that Mr. Adams lost a cow at th same time? A. He told me. Q. You don't know, as matter of fact, that he lost it? A. No, sir; only what Mr Pollard told me. Mr. Pollard told me he lost a cow at th same time; she got out of the pen, and he couldn't find her. The above testimony was objected to as being "incompetent irrelevant, and immaterial," and we are here asked to d clare its admission to have been error, for two reasons: ( Because, under the circumstances of this case, it was an a

**Possession of stolen property—Place.** tempt to prove a separate and independant larceny. Fc the reasons heretofore stated, we hold that this objectio should have been sustained. It is not sufficiently show that the two sets of cattle were taken from about the sam place. (2) Because it is hearsay. Upon this point th United States attorney contends that, as this objection wa not specifically made at the trial, the court was not bound notice it. While it is true that all hearsay evidence is i competent evidence, yet it is the rule that the specific, an not the general, objection should be plainly stated to th court, so that the court's judgment may be fairly obtained

**Evidence— Hearsay.** relation to it. But in this case the evidence objected to being incompetent was so obviously and certainly hearsa that the court, we think, even on its own motion, shou have stricken it out.

In the second assignment of error the side-bar rema of the United States attorney is assigned as error. Whi counsel, in their conduct of a case and in argument, a allowed some considerable latitude, yet if it can be sho that the remark was improper, and was prejudicial to t

defendants' case, and proper objection was made, and over-ruled by the court, and exceptions were duly saved, this court would not hesitate to reverse because of such an error. In this case, while the defendants objected to the remark, no ruling of the court upon the objection was pressed or had, and no exceptions were saved, and therefore we are not called upon to notice this assignment.

The eleventh assignment of error is as follows : "Eleventh. The court erred in allowing John Howell to be introduced as a witness and to testify in this case, over objection of defendants, after he had testified that he had been in the court room during the trial after the rule had been placed upon the witnesses at the request of counsel for the government; the proof showing that said witness was not, under the law, privileged from the rules." Section 2906, Mansf. Dig., provides that, "if either party require it, the judge may exclude from the court room any witness of the adverse party, not at the time under examination, so that he may not hear the testimony of the other witnesses." The exclusion of witnesses from the court room during the trial of a case is left, by this section, in the sound discretion of the court. Randolph vs McCain, 34 Ark. 696. When, however, a witness. by inadvertence, has remained within the hearing of the other witnesses during the trial, and is afterwards permitted to testify, the court should, we think, if so requested, instruct the jury that this fact might be taken into consideration by them as affecting the credibility of the witness' testimony; but, as this was not asked, we do not find that the trial court abused its discretion in this matter. For the errors aforesaid this case is reversed and remanded for a new trial.

*Witness not prevented from testifying by remaining in Court-room.*

SPRINGER, C. J., and THOMAS, J., concur. TOWN-END, J., did not participate in the case.