**PARKER-GORDON CIGAR CO. v. CHICACO, R. I. & P. RY. CO.**

No. 12409—Opinion Filed Dec. 11, 1923.

**1. Appeal and Error—Harmless Error—Instructions.**

Although an instruction may not contain a proper statement of the law or may not be applicable to the issues involved, yet if it is clearly apparent from the whole record that no prejudice has resulted from the giving of said instruction, the error will not be considered on appeal.

**2. Same.**

Record examined, and held, that no other verdict could have been rightfully rendered, and the rights of the plaintiff were not prejudiced by the giving of the instruction complained of.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by Parker-Gordon Cigar Company against the Chicago, Rock Island & Pacific Railway Company. Judgment for the defendant, and plaintiff brings error. Affirmed.

Simons, McKnight & Simons, for plaintiff in error.

C. O. Blake, W. F. Collins, W. R. Bleakmore, and A. T. Boys, for defendant in error.

Opinion by JARMAN, C. The Parker-Gordon Cigar Company commenced this action against the Chicago, Rock Island & Pacific Railway Company in the district court of Garfield county to recover the sum of $550, which the plaintiff alleges

to be the value of a shipment of cigars that was destroyed by fire prior to their delivery by the railroad. This cause was submitted to a jury, who returned a verdict in favor of the defendant, on which judgment was rendered, and the plaintiff brings error.

The plaintiff had its headquarters and place of business at Kansas City, Mo., and on March 26, 1920, the plaintiff delivered to the defendant two cases of cigars to be delivered to the Godfrey Tobacco Company at Enid, Okla., and, upon receipt of said cigars, the defendant executed its bill of lading under date of March 26, 1920, to cover said shipment; the defendant duly transported said cigars to the city of Enid, and the same arrived at Enid on April 1, 1920, and were unloaded and placed in the defendant's depot; on April 5, 1920, these two cases of cigars were destroyed in a fire that burned the depot of the defendant.

Section 5 of the bill of lading under which the cigars were shipped provides:

"Property not removed by the party entitled to receive it within 48 hours (exclusive of legal holidays) after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only, or may be, at the option of the carrier, removed to and stored in a public or licensed warehouse at the cost of the owner and there held at the owner's risk and without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

Therefore, by the terms and provisions of said bill of lading or contract, under which said cigars were shipped, the Godfrey Tobacco Company, the consignee, had 48 hours to remove the cigars after being notified by the defendant of their arrival at Enid, and during this time the defendant would be liable for the value of the cigars if the same were destroyed or lost; but the defendant would not be responsible nor liable for said cigars if the same were lost or destroyed after 48 hours from the time the defendant gave notice to the consignee of their arrival at Enid, except from negligence on the part of the defendant.

The plaintiff alleges and contends that while the cigars arrived at Enid on April 1st, the defendant did not notify the consignee of their arrival until the morning of April 4th, and that the 48 hour period, within which said goods might have been

removed by the consignee, had not expired at the time they were destroyed by fire on April 5th, and that, therefore, the defendant is liable to the plaintiff for the value of said cigars.

The defendant alleges and contends that it notified the consignee of the arrival of said cigars at Enid on April 2nd, and since the fire which destroyed said cigars occurred more than 48 hours from the time the defendant gave such notice to the consignee, its liability as a carrier had ceased, and inasmuch as said cigars were not lost nor destroyed through any negligence of the defendant, therefore, the defendant is not liable to the plaintiff in the capacity of a warehouseman.

There is no contention on the part of the plaintiff that the cigars were lost through the negligence of the defendant.

The issue decisive of the case is whether the cigars were burned within 48 hours from the time the defendant notified the consignee of their arrival at Enid, so as to make the defendant liable for the value of said cigars as a carrier. This question was fully and fairly submitted to the jury, by the court, under proper instructions.

There was some evidence offered by the defendant to show that the consignee refused and declined to accept said cigars, and in this connection the court gave the following instruction, to wit:

"You are further instructed that in case you find from the evidence that the defendant railway company tendered the cigars involved in this case to the consignee, the Godfrey Tobacco Company, at any time before the cigars were destroyed and the said consignee refused to accept said goods, then the said defendant's liability as a common carrier immediately ceased, and it only became liable as a warehouseman; and, in this case, they are not charged for liability as such warehouseman, and in that event, the plaintiff cannot recover"

—to which the plaintiff duly excepted. The plaintiff assigns as error the giving of this instruction and contends that the same was prejudicial to the rights of the plaintiff. The defendant contends that no prejudicial error was committed in the giving of said instruction even if the same were erroneous, and it is insisted that an examination of the record as a whole will disclose that no other verdict could have been rightfully rendered except the one that was rendered in the case.

An examination of the record shows that the following evidence on the one issue that is decisive of the case—that is whether these goods were destroyed in the hands of

the defendant within 48 hours from the time notice was given by the defendant to the consignee of the arrival of said goods at Enid,—was introduced, to wit: Direct examination of D. V. Godfrey, a witness for the plaintiff.

After testifying that the freight depot burned on April 5th, this witness was asked:

"Q. When, prior to that time was any notice given to the Godfrey Tobacco Company of the arrival of the two cases of cigars that are involved in this controversy? A. Well, sir, I am not absolutely positive, but as best I can remember now, I answered the telephone myself. It was a telephone notice. As I say, I am not positive but I think it was in the morning before the fire that night. Q. That was on the 5th? A. Well, I don't know. Of course, I am not saying. I am not positive. It might have been the day before that but I remember I answered the telephone myself. Q. Then you mean by that that it was either the 4th or the 5th day of April? A. Yes, it was one or the other. Q. That was the first notice that the Godfrey Tobacco Company had of the arrival of these goods? A. Yes, sir. I am not positive about it, but I remember answering the telephone myself."

Cross-examination:

"Q. Now, Mr. Godfrey, what has been your custom while you have been in business here, when shipments would come in on the Rock Island? How would you secure notice of the arrival of a shipment and those being ready for delivery? A. I always received notice by telephone. Q. It was the custom to telephone to you notifying you of the arrival of shipments from the Rock Island? A. Yes, sir. I have so many shipments that they don't drop cards because it would take longer that way for me to get notices than it would by telephone. Q. In order to expedite matters, it was your custom to be telephoned to when the stuff was ready for delivery, was it? A. Yes, sir. All the railroads here do that. Q. How long after the arrival of goods or shipments is it before they call you and tell you that the goods are ready for you? A. I cannot say to that. They are generally very prompt in the matter, though. Q. Generally on the day of the arrival of the goods or the next day is when they notify you of the arrival of shipments? A. As far as I know, it is. Q. I believe you said you are not sure just what day this conversation was had over the telephone? A. No. I am not positive about the day, but it kind of occurs to me that it was in the morning before the fire that night; that is the way I remember it. Q. Or it might have been before that? A. It might have been before that a day or so or something like that. It might

have been, I have shipments come in and am notified every day."

Direct examination of John R. Weissinger, a witness for the defendant: Witness testified that he was the assistant cashier for the defendant at Enid and that he bad been in the employ of the defendant since 1904; that it was his duty and custom to check over the freight bills each morning and then notify the firms doing their own hauling of freight received for them, and that he notified the Godfrey Tobacco Company of this shipment of cigars by telephone. The witness further testified that the drayman for the Godfrey Tobacco Company notified witness on April 5th that the shipment of cigars would not be accepted by the Godfrey Tobacco Company, and that on that date he made a written report to the freight claim agent at Chicago, and said report was introduced in evidence, which recited that notice was given to the consignee on April 2nd; and the witness swore positively that said notice was given on that date.

The testimony of the witness Godfrey, who is the only witness introduced by the plaintiff on this issue, shows that it was the custom of the railroad company to notify the plaintiff immediately upon the arrival of goods at Enid, for the plaintiff, and that in this case he did not know when notice was given to the plaintiff of the arrival of the goods in question, but that it was his recollection that it was either on the 4th or 5th of April or that it might have been before that a day or so. The witness does not attempt to fix the time when this notice was given and testifies that his recollection is not definite at all. While on the other hand, the witness Weissinger, introduced by the defendant, testified positively, upon refreshing his memory from the written records, that notice was given of the arrival of these goods on April 2nd, and the written record, which was compiled by the witness, while the goods were still on hand, shows that notice was given to the consignee on April 2nd, which was more than 48 hours prior to the fire. The evidence in this case is insufficient to support a verdict for the plaintiff and under the record, as a whole, no other verdict could have been properly rendered in the case except the verdict for the defendant which was rendered; and therefore, even though the instruction complained of was erroneous, still the plaintiff's rights were not prejudiced thereby and the error of the court in giving such instruction will not be considered.

"Although an instruction may contain an improper statement of law, if it is clearly apparent from the whole record that no prejudice has in fact resulted therefrom, the error will not be considered.

"Where no other verdict could have been rightfully rendered, the appellate court will not consider exceptions based on instructions given and refused." Armstrong v. Poland, 56 Okla. 663, 156 Pac. 220; Thompson v. Hashbarger, 87 Okla. 267, 210 Pac. 922.

No reversible error appearing, the judgment of the trial court is affirmed.

By the Court: It is so ordered.