James B. MULKEY and Farmers Exchange
Bank, a Corporation, Plaintiffs in Error,

v.

Alvin J. MORRIS, Defendant in Error.

No. 36962.

Supreme Court of Oklahoma.

July 2, 1957.

Gomer Smith, Jr., Oklahoma City, for plaintiff in error James R. Mulkey.

Lee Welch, Antlers, for plaintiff in error Farmers' Exchange Bank of Antlers, Okl.

Joe Stamper, and C. E. Dudley, Antlers, and Edwin W. Dudley, Madill, for defendant in error.

BLACKBIRD, Justice.

The parties to this appeal appear in reverse order to their appearance in the trial court, and will be referred to as "plaintiff" and "defendants", as they appeared there, except where otherwise designated.

Involved herein is plaintiff's recovery of $8,000 he advanced to one L. W. Bolin for Bolin's purchase of the interest of his partner, the defendant James R. Mulkey, in a livestock auction sales business at Antlers, Oklahoma. There is no conflict in the evidence concerning most of the facts out of which the controversy arose. In May, 1951, Bolin and Mulkey, both of whom then resided at Mercedes, Texas, came to Antlers and purchased the business from plaintiff for $8,000, paying $5,000 thereof in cash, and giving their promissory note, due October 1st of that year, for the remaining $3,000. Under other terms of the sale, plaintiff continued his ownership of the sales barn, pens and lots in which the business was operated, and received a monthly rental therefor from these purchasers, but Bolin and Mulkey had the option of buying these premises and real estate for another $17,000, less the existing mortgage indebtedness thereon.

Shortly thereafter Bolin and Mulkey formally associated themselves as partners in the operation of said business, under the name of B & M Livestock Commission Company. Then Mulkey left Bolin in active charge of the business, with authority to sign checks drawn against the partnership bank account in the defendant bank; and returned to his regular occupation of farming at his home in Texas. Within a short time, either late May or early June, 1951, Mulkey, on one of his periodic trips back to Antlers, learned that Bolin was drawing checks on the partnership account in the defendant bank for purposes not connected with the business, and, as a result thereof, the partners (apparently after a conference between themselves) instructed said bank (which Miss Jeffers testified she thought occurred on the morning of June 12th) that thenceforth it was to honor for payment out of said partnership's account, only checks drawn and signed for said company by its chief bookkeeper, Miss Mary Jeffers, who apparently acted also as a sort of office

manager. On June 14, 1951, it was necessary for Mulkey to advance the B & M Company $4,000 out of his private funds in a Mercedes, Texas, bank, which said advancement was deposited to said company's credit in the defendant bank to keep its account there from being overdrawn. About the same time Mulkey instituted District Court Cause No. 7214 against Bolin and the defendant bank. The exact nature of this action does not appear except that therein some sort of restraining order and injunction against the bank was applied for. Whether as a consequence of the filing of this action, or not, Bolin, on June 13, 1951, deposited $6,500 in the B & M Company's account in the defendant bank, in repayment, partially at least, of said company's funds he had used for private purposes, as aforesaid. That afternoon Miss Jeffers issued Mulkey a check on said company's account reimbursing him for the $4,000 personal check that he had that morning deposited in the company's account to avoid overdrafts (as above indicated). Also, on the same day, Mulkey and Bolin signed an agreement purporting to dissolve the partnership, reciting that they were to complete their "transaction" (exercise their option to buy the auction sales barn premises as aforesaid) with Morris the next day, June 14th, and agreeing that on the latter date, either would sell his interest to the other. Under its terms, Bolin could purchase Mulkey's interest for $8,000. That night (June 13, 1951) Bolin asked plaintiff to lend him the $8,000 necessary to purchase Mulkey's interest, but plaintiff refused, notwithstanding Bolin's telling him that the B & M Company then had $12,000 in the bank. The next day, Morris met Bolin and Mulkey at Attorney S's office ostensibly to accomplish whatever was necessary in the exercise of their aforesaid option to buy the sales barn premises, and Bolin and Mulkey, in Morris' presence, engaged in a heated discussion. From what he heard of it, Morris got the impression they were arguing over which one was going to buy the other's interest. When, during the course of the meeting, Bolin renewed his request of Morris to lend him the necessary $8,000 to buy Mulkey's interest, and Mulkey corroborated Bolin's representation of the night before, that the business had $12,000 in the bank and also stated that, of said balance, $9,000 was "unencumbered", and that if Bolin bought his interest he would become the owner of all the company's assets and property, plaintiff then consented to advance Bolin the $8,000. According to plaintiff's testimony, it appeared to him that he would get his "money back in 30 minutes * * *" (after Bolin's purchase of Mulkey's interest was complete and Bolin got the business all in his own name). Thereupon Mulkey and Bolin had Attorney S draw them a new "Agreement To Dissolve Partnership", which they both signed in Morris' presence and which purported to assign to Bolin, Mulkey's interest in the partnership's previous contract with plaintiff containing the option for purchase of the sales barn, and which, among other things, recited that Bolin accepted assignment thereunder of Mulkey's interest in the "moneys, properties, contracts, chattels, and good will" of the partnership and that he agreed to assume all of its indebtedness and save Mulkey harmless from payment of any part thereof. After this was done, plaintiff wrote Bolin a personal check in the amount of $8,000 on an Atoka, Oklahoma, bank, but upon Mulkey's then demanding cash, or its equivalent, plaintiff accompanied him and Bolin to Antlers' First National Bank, where Bolin deposited Morris' check to his own personal account there, and thereupon, by writing his own check on said account, Bolin purchased, and handed to Mulkey, a cashier's check made payable to the latter in the amount of $8,000. Mulkey then left the Bank and Bolin drove Morris to the sales barn in his auto, and gave him a check for $5,000. This check purported to be drawn on the B & M Company's account at the defendant bank, but was signed only by Bolin. Later, "soon after one o'clock (P. M.)", when plaintiff presented said check to the defendant bank, said bank refused to pay it,

on the ground that Bolin's signature was not authorized for withdrawals from said account. Plaintiff then left the bank and returned later, with Attorney S, and showed the banker a copy of the aforesaid "Agreement To Dissolve Partnership" that the attorney had drawn, and Mulkey and Bolin had signed, earlier that day in his office; but the banker again refused payment of the $5,000 check. That evening, Mulkey and Bolin went to the office of Attorney W, who represented Mulkey, and signed a "Stipulation And Agreement", which, on its face, was for filing in Cause No. 7214, supra. In this document, it was agreed that the funds on deposit in the defendant bank to the B & M Company's credit "in excess of $12,000 shall remain on deposit to such account and that partnership checks heretofore written on said parnership account to diverse persons all of which checks are signed B & M Livestock Commission Company, by Mary Jeffers * * * be paid and discharged out of such account and that when a reasonable time has lapsed and when all such checks and obligations have been paid that the balance of such funds shall be paid out to the said L. W. Bolin, or his order, and that this agreement is made and filed in said case and a duplicate delivered to said bank in lieu of the application for the issuance of a restraining order and injunction against such bank as asked for *an* above law suit, but it is agreed that the above law suit shall remain in full force and effect until prosecuted and determined in due order." Before that time of said day, Mulkey had already presented, and obtained payment, at the defendant bank, of the $4,000 reimbursement check Miss Jeffers had written him on the B & M Company's account there, as aforesaid. By the time plaintiff returned to said bank the next day, June 15th, to renew his efforts to obtain payment of the $5,000 check Bolin had written him on said Company's account, and had then delivered to the bank officer a letter Attorney S had earlier the same day written to it for him, stating that he (plaintiff) would "hold (the bank) liable in damages" if it paid "any checks from (the

B & M Company's fund in said bank) or permitted it to be dissipated", the bank had received a copy of the above-quoted Cause No. 7214 "Stipulation And Agreement" and had been furnished with a list and description of checks totalling more than $11,000 it was (according to said stipulation) to pay out of the B & M Company's $12,000 balance there.

Remaining unsuccessful in obtaining payment of his check from Bolin, plaintiff then instituted the present action against Mulkey and the Farmers' Exchange Bank to recover the $8,000 he had advanced Bolin to buy Mulkey's interest in the B & M Livestock Commission Company, as aforesaid. The allegations upon which said plaintiff predicated Mulkey's liability (as shown in his First Amended Petition) were, in substance, that the aforesaid representations he claimed Mulkey had made to him that the B & M Company had $9,000 in "unencumbered" funds in the defendant bank, and that as a result of Bolin's purchase of Mulkey's interest in said company, there would be transferred to Bolin said unencumbered balance, and which representations were made for the purpose of inducing plaintiff to furnish the $8,000 for said purchase, and which plaintiff relied upon in making said advancement, were false and known by said defendant Mulkey to be false, and that as a result of plaintiff's said reliance upon said false representations, he was defrauded of said $8,000. Plaintiff further alleged that he would not have advanced said sum to Bolin had he known that checks were outstanding against the B & M Company's bank account in such an amount as to reduce the balance therein below $8,000, or if he had known said defendant did not intend to comply with his promise to turn a bank balance of $9,000 over to Bolin. Plaintiff further alleged that Mulkey's acts constituted deceit. He sought to predicate the defendant bank's joint liability to him for $5,000 (of the $8,000 he sought from Mulkey) on the theory that in refusing payment of Bolin's afore-described check in that amount, it had acted arbitrarily and

wrongfully in view of its alleged knowledge of Bolin's purchase of Mulkey's interest and Bolin's then exclusive ownership of the B & M Company's assets, and the sufficiency of the balance to the credit of said Company in said bank, at that time, to defray payment of said check. Plaintiff further alleged that in said refusal, the bank conspired with Mulkey to prevent the check's payment.

Upon his further allegation, upon belief, in said pleading, that the defendant bank was then indebted to the defendant Mulkey, or had money or property belonging to him within its possession or control, not exempt from seizure or sale on execution, and the further allegation that Mulkey was a resident of Texas and had no other property subject to execution sufficient to satisfy his demand, plaintiff added to his prayer for recovery of the $5,000 against both defendants and an additional recovery of $3,000 against the defendant Mulkey, a prayer for garnishment of any of Mulkey's funds held by defendant bank.

The bank did not file its answer as garnishee within the time specified in the garnishment summons served on it, but its attorney told plaintiff's attorney orally that the bank did not then have within its control any funds belonging to the defendant Mulkey; and, when much later, the bank did file, out of time and without leave of court, its verified garnishee's answer corroborating its attorney's oral representation, plaintiff joined issue thereon by filing a reply in the form of a general denial.

Besides the facts hereinbefore related and established at the trial, and others unnecessary here to mention, it was indicated that after he had returned to his home in Mercedes, Texas, with the proceeds of the cashier's check plaintiff had enabled Bolin to purchase for him, Mulkey had no money in any bank in Antlers. A reasonable inference from this was the truth of the defendant bank's garnishee answer, that, at the time the garnishment summons was served upon it, it had no money or property belonging to Mulkey in its possession. Plaintiff offered no proof to the contrary;

and, after the court had rendered judgment, in accord with a jury verdict for plaintiff against the defendants jointly for the sum of $5,000, and, in his favor, against the defendant Mulkey, for the additional $3,000, plaintiff moved the court to enter additional judgment against the defendant bank, as garnishee, for the entire $8,000; it being his theory that the bank's failure to file its garnishee answer within proper time, entitled him to judgment against said garnishee for full amount of the judgment rendered against the principal defendant, Mulkey. The court overruled this motion; and, when, after the overruling of their motion for a new trial, the defendants filed their joint petition in error in this appeal from the principal judgment, the plaintiff filed a separate petition in error herein alleging that the court erred in refusing him the judgment in garnishment (for $8,000) he sought against the defendant bank.

■ Under the first proposition the defendant Mulkey urges for reversal of the judgment against him, he argues the insufficiency of the evidence to establish the elements of any fraud by him on the plaintiff, and, upon this hypothesis he contends that the trial court erred in overruling defendant's demurrer to plaintiff's evidence and motion for a directed verdict. As defendants did not stand on the demurrer, but, after it was overruled, introduced evidence on their own behalf, only the court's alleged error in overruling the motion is involved. Chickasha Cotton Oil Co. v. Hancock, Okl., 306 P.2d 330.

■ Both parties agree that there are seven necessary elements of actual fraud, all as set forth in Tyler v. Hartford Accident & Indemnity Co., 195 Okl. 523, 159 P.2d 722. In the interpretation, or characterization of plaintiff's position, advanced by Mulkey's counsel, they first seek to confine it to the claim that if said defendant had informed plaintiff there were checks outstanding against the B & M Company's bank account totalling enough to reduce the balance in said account to less than $2,000, plaintiff would not have advanced

Bolin the $8,000. They follow this restrictive interpretation of plaintiff's position, with the argument that "at most this is a contention that Mulkey failed to disclose all of the facts which he should have disclosed." Then they say: "It would seem that what plaintiff is trying to contend * * * is that Mulkey made a false statement as to the net value of the partnership bank account." Plaintiff's evidence does not warrant such interpretations, or inferences, to be drawn as to his position. His position extends further than merely a claim of Mulkey's failure to disclose, or that his representation was merely an estimate, or opinion, as to value. Plaintiff's evidence shows that the gist of his complaint was not Mulkey's silence, inaction, failure to disclose vital information, or any other non-feasance, but that the cause of plaintiff's being defrauded was Mulkey's overt, and affirmative, misrepresentation of the amount of money in the B & M Company's bank account that was free and clear of any claim, encumbrance or authorized deduction. Mulkey's representation that this unencumbered bank balance was $9,000 cannot properly be placed in the same category with estimates, opinions, or representations, as to value. This figure, or fact, was positive, and capable of definite ascertainment, even to the dollar or fraction thereof. It cannot be regarded as a mere expression of opinion as to value; and, consequently, the authorities Mulkey's counsel cite on that subject have no application. Likewise inapplicable are the authorities defense counsel cite with reference to silence constituting a suppression of facts, and their citations concerning a party's reliance upon representations made by one bearing a confidential relationship to him. Here, it was never claimed that there was a confidential relationship between Mulkey, and the plaintiff, or that the former was a fiduciary of the latter; and such relationship is not one of the seven essential elements of fraud referred to, supra. Nor does plaintiff claim there was *initially* any duty upon Mulkey to make any disclosure whatsoever to plain-

tiff, concerning the company's bank account. Nor does plaintiff claim that, if Mulkey had remained silent concerning the matter, he would have incurred any liability whatsoever. But, once having undertaken to represent the true status of said account to plaintiff, Mulkey assumed the duty of being truthful about it, if he intended for plaintiff to rely on his statement, and plaintiff properly did so, to his detriment. Berry v. Stevens, 168 Okl. 124, 31 P.2d 950 (6th syll.).

Mulkey's counsel points out that there is no evidence that plaintiff made any inquiry as to Bolin's financial responsibility, or that of the B & M Company, or, specifically, as to what debts were outstanding against it, before advancing the money for the purchase of Mulkey's interest in said company. The absence of such evidence is not controlling here. One who relies upon a false, material representation is not precluded from recovering damages for his detriment therefrom, because of the fact that he did not investigate the veracity of the representation. Greene v. Humphrey, Okl., 274 P.2d 535. It is true, as counsel points out, that plaintiff was present in Attorney S's office when Mulkey and Bolin directed said attorney to draw up their second agreement to dissolve the partnership, and this agreement (as hereinbefore stated) contemplated that Bolin assume all of the B & M Company's indebtedness; but counsel do not show any particular significance in this fact, nor do they make any attempt to show that it constituted any kind of obstacle to plaintiff's right to rely on Mulkey's representation as to the company's outstanding checks, or unencumbered bank balance.

Defense counsel further say there is no evidence that, when Mulkey made the representation, he knew it was false and intended that plaintiff should act on it; or that he made said representations recklessly, and as a positive assertion, without any knowledge of its truth. Said counsel's statement that, as far as the testimony of plaintiff himself shows, Mulkey's repre-

sentation made merely in a discussion *with Bolin,* about which of the two would buy the other out, is apparently intended to support their contention of the insufficiency of the evidence to show Mulkey's intention that his said representation should be relied on by plaintiff. For support of their contention that, at the time Mulkey made the representation, he did not know the total amount of the checks outstanding against the company's bank balance, his counsel mention Bolin's aforesaid previous drawing of unauthorized checks against the company's bank account; and they say that "when he learned of such amount, he immediately took steps to insure that same would be paid by the bank when presented, in accordance with the agreement to dissolve the partnership, entered into in the presence of plaintiff." The inference here is that there is no evidence tending to show that Mulkey knew the total amount of the checks that had been written against the company's account until *after* he had made the representation—when Miss Jeffers completed the list thereof. According to Miss Jeffers' testimony, she did this on the *afternoon* of June 14th; whereas, it is undisputed that the transaction, out of which this controversy arose, was completed "about *noon*" of said day. It must be conceded that there is no direct and positive evidence to show that, at the time Mulkey made the representation in question, he knew either the exact total of the outstanding checks against the account, or the balance that would be left in it after all such checks had cleared, or been paid by the bank. It is often difficult, and, in most cases impossible, to show by direct evidence what is in a person's mind, or within his knowledge. That method of proof, however, is not required, and all authorities recognize the efficacy of circumstantial evidence for such proof. In the present case, we think that some of the circumstances hereinbefore mentioned in our statement of the factual background of this controversy, constituted a sufficient basis for the jury's conclusion, by its verdict, either that Mulkey (though he may not have known the

exact size of it) knew that the unencumbered balance in said account did not amount to as much as $9,000—or that his representation that it did, was made recklessly and without regard to its truth or falsity, and was intended to be relied upon by plaintiff. Defense counsel makes no effort to, and the evidence does not, show any other reason or explanation for his having made such representation. It is axiomatic in this jurisdiction that a trial court correctly overrules a defendant's motion for a directed verdict when, upon construing it in the light most favorable to plaintiff, the evidence, and the reasonable inferences therefrom, reasonably tend to establish plaintiff's cause of action and sustain the verdict and judgment in his favor. Independent-Eastern Torpedo Co. v. Price, 208 Okl. 633, 258 P.2d 189. Upon application of this rule to the evidence in this case, we cannot say that the trial court erred in overruling the defendant Mulkey's motion.

■ We are of the opposite opinion, however, as to said court's overruling of the motion for a directed verdict interposed on behalf of the defendant bank. It is not claimed that said bank was in any way connected, or had anything to do, with Mulkey's misrepresentation to plaintiff, or that any of the bank's officers, agents or employees knew that such a misrepresentation, or any scheme of which it may have been a part, had ever been evolved or accomplished, prior to plaintiff's presentation of the hereinbefore described check from Bolin to said bank for cashing, or payment. The only part of his pleading by which plaintiff attempted to charge the bank with being implicated may be described as follows. He first alleged that the balance in the B & M Company's checking account was assigned by Mulkey to Bolin, "of which assignment the said bank had knowledge" at the time plaintiff presented said check for payment "but that said bank arbitrarily and wrongfully refused and failed to honor said check." Then plaintiff followed this allegation with the allegation "that the officers, agents, and servants of said bank

did conspire with Mulkey to *prevent the payment* of said check to the detriment of plaintiff." (Emphasis ours.)

■ Plaintiff's counsel cite no authority on any such question, and it is neither necessary nor appropriate for us to decide, whether or not the "Agreement To Dissolve Partnership", of which plaintiff and his attorney apprised the bank by taking a copy thereof to it, constituted, in itself, an assignment, or order for the transfer to Bolin, of the B & M Company's funds in said bank, and was binding on it. It will be remembered that this was at a time when the bank remained without any specific order, or authorization, to honor any checks on the company's bank account, except those signed by Mary Jeffers. The evidence does not reveal whether, at the time of the first attempt to obtain payment of said check, the bank was apprised of the agreement, or not. The record does reveal, however, that before plaintiff had contacted any of the bank's officers, or agents, on June 15th, the bank had been delivered a copy of the "Stipulation And Agreement" Attorney W had drawn, and Mulkey and Bolin had signed, late in the afternoon of June 14th, for filing in Cause No. 7214, supra. This instrument was a plain direction to the bank to keep intact the B & M Company's balance of $12,000 there, except amounts whose disbursement was called for by checks signed by Miss Jeffers. The bank's refusal to honor plaintiff's check on June 14th, in compliance with the depositors' previous direction, is not claimed to have constituted negligence on the part of the bank, nor to have been an unwarranted precaution, on its part, against liability to said depositors, Mulkey and Bolin. Much less, we think, is it shown to be sufficient evidence that the bank was involved in any conspiracy with Mulkey and Bolin. It is common knowledge, among those with experience in such matters, that a bank cannot pay checks drawn on a depositor's account by persons not authorized by the depositor himself, or some higher authority (as in the case of funds impounded by court order) without subjecting itself to liability to said depositor therefor. In this connection, see 9 C.J.S. Banks and Banking § 288, note 41, § 290, notes 74–76, § 323, notes 86, 87, § 327, notes 74, 83, 85, § 331, notes 10, 11, § 332, notes 15, 18, 20, and § 333, notes 46, 47, 48. And a bank's effort to discharge its duty in such matters, or even to exercise an abundance of caution to protect itself from liability to its depositors, while conceivably subjecting it to a charge of negligence, does not, without more, ordinarily establish its culpability as a conspirator or co-conspirator. Here, there is not an iota of direct evidence tending to show any intention on the part of the defendant bank, through its officers or employees, to conspire with Mulkey and/or Bolin to prevent payment of Bolin's check, while (without more information than it was shown to have had) there was substantial room for doubt as to whether or not any of the funds, in its possession, to the credit of B & M Company, belonged to Bolin, or were subject to his withdrawal, even under the terms of the hereinbefore described agreement indicating a transfer, or impending transfer, to him of said company's "moneys", and other assets, *as well as its debts and liabilities.* Such evidence falls far short of the cogent and convincing proof required to establish the bank as a conspirator. Plaintiff's counsel attempt to fashion such evidence from the circumstance that, though it refused payment on plaintiff's check from Bolin, the bank paid the reimbursement check of $4,000 that Miss Jeffers wrote Mulkey on the B & M Company's account. They infer, despite evidence to the contrary, that the bank paid Mulkey's check *after* it had a copy of the Mulkey-Bolin sale agreement; but we do not think this is of controlling importance since, in view of the fact that at the time both checks were presented for payment only the person who signed the Mulkey check (Miss Jeffers) was a directly and specifically authorized drawor on said account. It is therefore our opinion that the trial court erred in overruling the defendant bank's motion for a directed verdict.

■ Nor can we uphold plaintiff's contention, in the cross-appeal he has filed herein, that the trial court erred in overruling his motion for judgment against the defendant bank, as garnishee. As hereinbefore indicated plaintiff's position that he was entitled to such judgment was based on the theory that same was authorized, under Tit. 12 O.S.1951 § 1179, by said defendant bank's failure to file its garnishee answer within the time specified in the garnishment summons served upon it. In State Nat. Bank v. Lowenstein, 52 Okl. 259, 155 P. 1127, cited by plaintiff, this court held that, under said statute:

"If any garnishee having been duly summoned, shall fail to file his answer as required by law, the court may render judgment against him for the amount of the judgment which the plaintiff may recover against the defendant, in the action, and for damages and costs, together with the costs, of such garnishment, without further proof of the liability of such garnishee."

Plaintiff's position seems to be that the filing of a garnishee's answer "out of time", and without leave of court having been first obtained, is the equivalent of a failure to file it "as required by law" under the above-quoted pronouncement. Under the circumstances of this case, however, we do not think this question is before us, for, in our opinion, when plaintiff filed his reply generally denying and adjoining issue upon the facts alleged in the garnishee answer, without raising any objection to the time it was filed, this was a tacit treatment of it by him as a pleading that had been properly filed, and constituted a waiver of any objections he might have then, or could have previously, made, to the time of its filing. The principle of waiver has been similarly applied in previous garnishment proceedings (First Nat. Bank of Elk City v. Huff, 29 Okl. 547, 118 P. 582; Brooks v. Fields, 25 Okl. 427, 106 P. 828) and we see no reason why it should not have the same efficacy here. Notice also Oskison v. Bagby, 172 Okl. 569, 46 P.2d 331, 332, and 71

C.J.S. Pleading § 408, note 79. As said in the Brooks case [25 Okl. 427, 106 P. 830]:

"* * * (garnishment) proceedings should be governed by equitable principles to the end that no unwarranted vexation or expense be inflicted upon the garnishee. And the courts will protect him from the payment of another's debts unless under the law he is clearly liable."

■ Under his Proposition II, the defendant Mulkey complains of error in certain of the trial court's instructions to the jury. The first one counsel mention is Instruction No. I, in which the court reviewed the allegations of the parties' pleadings. In repeating the allegations of plaintiff's First Amended Petition, the court mentioned his claim "that he would not have advanced the $8,000 to Bolin if he had known that checks were outstanding against such account so as to reduce said account below such sum, or if plaintiff had known that Mulkey did not intend to comply with his alleged promise to turn over such account." Mulkey's counsel asserts that said quotation was not a fair statement either of plaintiff's allegations or of the proof, for they say plaintiff alleged Mulkey failed to keep his promise to turn over the partnership *assets* to Bolin, of which the bank account *was only one*. The quoted part of Instruction No. I, was a verbatim repetition of paragraph (6) of plaintiff's First Amended Petition. As we have seen, it was supported by evidence reasonably tending to show that if plaintiff had not believed, and relied upon Mulkey's representation that the B & M Company had an unencumbered bank balance of $9,000, he would not have advanced the $8,000 for the purchase of Mulkey's interest. This was the gist of plaintiff's complaint and the crux of the proof of his cause of action, though, in the introductory part (par. 2) of his said pleading, he mentioned that Mulkey had also told him that, by reason of the sale of his interest in, and dissolution of the partnership, he (Mulkey) was conveying to Bolin all of the assets of such partner-

ship (or his interest therein) to Bolin. The recovery plaintiff sought was not damages for Mulkey's failure to turn over partnership assets to Bolin. It was more in the nature of money had and received; he sought a specific sum, or advancement, of which he had allegedly been defrauded. For this reason, and the others above-indicted, we find no merit in Mulkey's argument that Instruction No. I was error, or, that, in its instructions, the court did not limit plaintiff's recovery to the difference between the $8,000 and the value of B & M Company's assets, if any, which plaintiff may have received when (according to some evidence), Bolin turned the business back to plaintiff, some three weeks after the transaction here involved.

▮ The first part of the court's Instruction No. II, was the definition of the term "deceit", as set forth in Tit. 76 O.S. 1951 § 3. Mulkey's counsel mention that this part of the instruction did not advise the jury of the "necessary elements which must be proved to come within that statutory definition"; but they do not mention, or suggest specifically, what they refer to as "necessary elements." We think that part of the instruction is clear and plain enough that it was not necessary for the court to further elucidate. Under the circumstances of this case, it was for the jury to decide, upon the basis of facts they found, whether this case came within the operation of the cited statute. If defense counsel desired more detailed or more specific instructions, they should have requested them. Oklahoma Transp. Co. v. Stine, Okl., 280 P.2d 1020. Mulkey's counsel also complains of the last part of said instruction by saying: "It is taken from digest abstracts of cases in which the suit is between two contracting parties about the subject of a contract." To support their contention of the inapplicability and incorrectness of this instruction, they point out that here there was no contract between Mulkey and the plaintiff. We cannot agree with counsel's interpretation of this part of the instruction. It merely refers to the

principle enunciated in Berry v. Stevens, supra, and we find no error therein.

▮▮ Mulkey's counsel's complaint concerning Instruction No. III in which the court gave the jury an abstract definition of "fraud" is similar to their complaint about the first part of Instruction No. II, except that, in addition, they say it, as well as Instructions Numbered V and VI, assume "that Mulkey cheated plaintiff * * *". We have carefully read these instructions and find no such assumption therein. Nor do we think the trial court erred in not attempting to tell the jury, more specifically and in greater detail than he did, just what facts they had to find to conclude that Mulkey's afore-described conduct constituted fraud within the definition given. Nor do we find any merit in the last part of Mulkey's counsel's argument in which they claim, in substance, that the instructions, as a whole, were inapplicable and misleading because they enabled plaintiff to recover on the hypothesis that Mulkey had breached a contract. (Counsel points out that mere breach of contract does not constitute actionable fraud.) Our review of the instructions reveals no substantial foundation for this complaint. We think the instructions as a whole were fair and applicable to the case. Although they might have been more detailed and complete, we find no substantial basis for counsel's generalizations to the effect that they were misleading and prejudicial. Without such fault, the errors, if any, in them must be considered harmless and insufficient cause for reversal. See Threadgill v. Anderson, Okl., 303 P.2d 297; St. Louis-S. F. Ry. Co. v. Withers, Okl., 270 P.2d 341; Parker-Gordon Cigar Co. v. Chicago, R. I. & P. Ry. Co., 94 Okl. 149, 221 P. 711.

▮ Under the third, and last, proposition in their brief, Mulkey's counsel adopt the argument made under the ninth proposition in the defendant bank's brief, in which complaint is made about certain conduct of one of plaintiff's attorneys during the trial. The first conduct mentioned occurred dur-

ing the voir dire examination of the jury panel, when the attorney is said to have repeatedly pronounced Mulkey's name with an accent on the last syllable. It is claimed that this was a ludicrous pronunciation, and was prejudicial. As far as the record shows, this voir dire examination was not transcribed by the court reporter, so that we cannot determine how often, or under exactly what circumstances, the complained of conduct occurred. However, the record does show that pursuant to the *first* objection of defense counsel appearing therein, the trial court sustained same, and admonished plaintiff's counsel against further pronunciation of Mulkey's name in the way complained of. The same observation may correctly be made of defense counsel's complaint about plaintiff's counsel asking some of the prospective jurors if they "had ever been the victim of a confidence game", which defense counsel says was beyond the issues, and improper and prejudicial. The Defense's last complaint is of plaintiff's counsel's characterizing, in his opening statement, the transaction between Mulkey and Bolin as a "sham transaction"; and of his examination of Miss Jeffers in a way that "was most inconsiderate and discourteous and suggestive of wrongdoing on her part." As to plaintiff counsel's use of the term "sham transaction", we find no defense objection in the record. With reference to the examination of Miss Jeffers, we find only one mild objection by one of Mulkey's attorneys, and no specific ruling thereon by the court. As to the complaint about plaintiff counsel's pronunciation of Mulkey's name and his use of the term "confidence game", the court promptly sustained counsel's objections to such language, as soon (so far as the record shows) as they were made. With reference to the alleged error, to which no objection was made, as well as to the one to which no ruling was insisted on, or obtained, and the one as to which the trial court's ruling was in favor of defendants, there is no proper basis for our review thereof. In this connection, see United Transports v. Jett, 193 Okl. 399, 144 P.2d 110; Holcombe & Hoke Mfg. Co.

v. Waters, 109 Okl. 107, 235 P. 198; Parker v. United States, 1 Ind.T. 592, 43 S.W. 858. Notice also St. Louis, I. M. & S. Ry. Co. v. O'Connor, 43 Okl. 268, 142 P. 1111.

In view of the foregoing, the trial court's judgment is affirmed in so far as recovery was granted plaintiff against the defendant, Mulkey, and denied against the defendant bank, as garnishee. It is reversed as regards plaintiff's recovery of any sum whatsoever against the defendant bank. The cause is therefore remanded to the trial court with instructions to modify its judgment accordingly.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.