The Illinois Central Railroad Company

*v.*

A. C. Seitz.

*Opinion filed February 21, 1905.*

1. Propositions of law—*proposition of law and fact is properly refused.* A proposition of law requiring the adoption by the court of the facts upon which it is based and upon which the evidence is conflicting before it could be held as the law is properly refused, as presenting a mixed question of law and fact.

2. Carriers—*unlawful discrimination in rate does not entitle carrier to hold goods for regular charge.* If a carrier contracts to unlawfully discriminate in rate by classifying the freight too low and accepts the goods for shipment, it is not entitled, after the goods reach their destination, to demand the additional charges, based upon proper classification, upon the ground that its act in making the discrimination was unlawful.

3. Same—*when rule permitting carrier to raise classification after shipment does not apply.* The rule permitting a railroad company to raise the classification of goods after issuing a bill of lading to the shipper upon his false representation as to their character, and to hold the goods at their destination until the additional freight charges so occasioned are paid, does not apply where a servant of the company saw the car being loaded, knew the character of the goods, classified them and issued the bill of lading.

4. Same—*when carrier is estopped to claim that plaintiff cannot maintain trover.* In an action of trover against a carrier for goods sold to pay freight charges, the carrier is estopped to claim that the plaintiff cannot maintain the action because he was neither the consignor or consignee nor the assignee of the bill of lading, where the refusal to deliver the goods to him was based upon the sole ground that the additional freight charges were not paid, the agent being notified by the consignee that the goods belonged to plaintiff.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Christian county; the Hon. W. M. Farmer, Judge, presiding.

This was a suit in trover, brought in the circuit court of Christian county by Seitz, the appellee, against the Illinois Central Railroad Company, appellant, to recover the value of a car-load of goods, consisting of groceries, store fixtures, household goods, a horse, wagon and harness, which had been delivered to appellant at Chicago for carriage to Pana, Illinois, and which, the declaration alleges, appellant converted to its own use. Appellant filed a plea of not guilty. Three trials have been had in the circuit court. The first two were by jury, and in each instance judgment was rendered for appellee and upon appeal by appellant to the Appellate Court for the Third District the judgment was reversed and the cause remanded to the circuit court for a new trial. (*Illinois Central Railroad Co.* v. *Seitz,* 105 Ill. App. 89; *Same* v. *Same,* 111 id. 242.) After the Appellate Court had remanded the cause the second time, it was tried before the court without a jury and a judgment was rendered in favor of appellee for $823.50. An appeal was again prosecuted by the railroad company to the Appellate Court for the Third District and that court affirmed the judgment of the circuit court. Appellant obtained a certificate of importance and brings the cause to this court by appeal.

About ten days before the goods were shipped, Seitz called at the freight office of appellant in Chicago and inquired the cost of a car in which to ship goods to Pana. He informed the person of whom he made the inquiry that the goods consisted of a stock of groceries and fixtures and a horse and wagon. He was told that the amount could not be fixed without a list of the articles and their weight, but that it would be from $25 to $35. A man named Kendall assisted Seitz in moving the goods from Chicago to Pana.

On July 20, 1901, Kendall went to the freight office of the appellant and asked for the car that Seitz had spoken about. He was told that the car would be placed at his disposal and he was directed to the house where the goods would have to be weighed before being loaded into the car. The car was then placed on one of appellant's team tracks. The goods were in a store in Chicago. Seitz waited at the store and assisted in loading the goods on the dray while Kendall remained at the freight yards and attended to loading the car. Each load was weighed by one of appellant's employees before being placed in the car. Seitz came with the last load, and after it had been transferred from the dray to the car, he gave Kendall $40 and told him to go and pay the freight. Kendall went to the house where the goods had been weighed. The bill of lading was there made out. Kendall directed that his name be placed in the bill of lading both as consignor and consignee. The clerk, in making out the receipt for the goods in the car described them as "emigrant movables." He testified that Kendall told him the goods were an "emigrant outfit" and that he did not know the character of the goods that had been placed in the car. Kendall testified that he knew nothing whatever about the different classes of freight, as classified by the railroad company, and further that the clerk who made out the receipt had been in the car a number of times while it was being loaded and had seen the goods as they were transferred from the dray to the car. After the bill of lading was made out Kendall and this clerk went to the freight office where another clerk rated the goods as of the seventh class, based on their description as emigrant movables contained in the bill of lading, and fixed the freight at $28. Kendall then accompanied the clerk to the cashier's office where he paid the $28 and received the bill of lading, properly receipted, from the cashier. He then returned to the car, and shortly thereafter the car was attached to a freight train and taken to Pana. Seitz and Kendall accompanied the shipment.

After the bill of lading had been delivered to Kendall, a freight inspector, employed by the Western Railroad Weighing Association, who had seen the goods loaded into the car, saw the duplicate bill of lading which had been retained by the railroad company, and observed that the goods had been shipped as emigrant movables and placed in the seventh class, when according to the classification adopted by the railroad company, under the rules of the Railroad and Warehouse Commission, they should have been designated as groceries, fixtures, horse, wagon, etc., and placed in the first class. The inspector, acting for appellant, thereupon changed the duplicate bill of lading to correspond with the proper classification. This change increased the freight on the goods $45.18.

Upon arriving at Pana, Seitz and Kendall went to the appellant's freight office, presented the bill of lading and asked for the goods. They were informed that the goods could not be delivered to them unless they paid the additional sum of $45.18. This they refused to do. Both Seitz and Kendall at that time told the agent at Pana that the goods belonged to Seitz. Two days afterward Kendall served a written notice on that agent, demanding the delivery of the goods to him. Thereafter several conferences were had between the agent at Pana and Seitz about the goods, but the agent refused to turn them over to Seitz unless the additional freight was paid. On July 17, 1901, the appellant notified Kendall and Seitz, in writing, that unless the additional charge was paid within twenty-four hours, the goods would be sold to pay the same. They were thereafter sold, but subsequent to the commencement of this suit.

James M. Taylor, (John G. Drennan, of counsel,) for appellant.

John E. Hogan, for appellee.

Per Curiam: Appellant submitted to the circuit court fifteen propositions to be held as the law of the case. All were refused except the tenth. The only assignment of error open to consideration here is that which challenges the action of the court in refusing the propositions other than the tenth.

The first proposition submitted is in the following words:

"Under the facts, as shown by the evidence in this case, the defendant had the right to re-classify the goods upon the inspection thereof and charge the proper freight, and demand the same upon the arrival of the goods at Pana, and to hold the goods so shipped until the proper freight charges were paid."

The facts in this case were disputed. In order to hold the proposition above set out, it was necessary not only that the court should adopt the appellant's view of the law, but also agree with its contention in reference to the facts. The proposition is therefore a mixed proposition of law and fact and was properly refused for that reason. Several other of the refused propositions were in like manner objectionable.

The third and the fifth, however, which are substantially the same, are propositions of law. The fifth is in the language following:

"If the evidence shows that the plaintiff, in the name of Kendall, secured a car from the defendant to ship goods from Chicago to Pana, and the plaintiff and Kendall loaded the car in person; and if the plaintiff or Kendall, caused the goods to be billed as 'emigrant movables' and shipped as seventh-class freight, but in fact loaded the car with merchandise which under the rules and classifications and tariffs of the defendant should have been billed and charged for as merchandise, then the plaintiff becomes liable for the extra freight so charged and the judgment should be for the defendant."

The law is that if the consignor falsely represents to the common carrier that the goods which he desires to ship are of a certain kind, and the carrier, without notice or knowl-

edge that they are of a different kind, accepts the goods and fixes and accepts the freight and delivers to the consignor a bill of lading on the basis that the goods are of the character stated by the consignor when in fact the goods are of an entirely different character, upon which the carrier would be lawfully entitled to charge a higher rate of freight, the carrier may, upon discovering this fact before the goods are delivered to the consignee at the place of destination, charge the excess of the freight against the goods and hold the shipment until the additional charges are paid. *Smith* v. *Findley,* 34 Kan. 316; *Missouri, Kansas and Texas Railroad Co.* v. *Trinity County Lumber Co.* 1 Tex. Civ. App. 553.

The evidence tended to show that appellant's clerk, who first classified the goods as "emigrant movables," had seen the goods as they were being loaded. If he had, then the company had notice of the character of the shipment. The proposition last above set out does not include, and is not based upon, the hypothesis that at the time the goods were classified, the appellant had no notice of their real character, or that it relied upon the description of the goods given by Kendall. For this reason the proposition was, as we think, inaccurate.

Appellant contends, however, that even if it knew the character of the goods, it could not lawfully have allowed them to be shipped at a lower rate than the usual rate, so that it became its duty, even after collecting the freight and accepting the goods, to re-classify them and charge the additional freight against them, for the reason that not to do so would have been an unlawful discrimination in favor of the consignor, under sections 125 and 126 of chapter 114, Hurd's Revised Statutes of 1903.

Conceding, for the sake of the argument, that making a rate lower than the ordinary rate would be an unlawful discrimination as to the party favored within the purview of the statute referred to, we still think appellant's position untenable. If a common carrier makes an unlawful discrim-

ination in favor of a shipper by contracting to carry his goods at a lower rate than they should bear and accepts the goods and carries them at that rate, it cannot, after the goods have reached their destination, charge against them an additional amount of freight sufficient to bring the total charge up to the proper rate. To do so would permit the carrier to make a rate lower than it properly should make, to secure the business, and thereafter take advantage of its own wrong to increase the charge and secure the usual compensation.

The only other question of law requiring consideration was submitted, in varying language, in several propositions, and is clearly stated in the eighth, which is as follows:

"The plaintiff, Seitz, being neither the consignor nor the consignee, and the bill of lading not having been assigned to him by Kendall, cannot maintain this action."

It appears from the evidence of Kendall, the consignor, and Seitz, the appellee and owner of the goods, that they went together to the agent of appellant at Pana, presented the bill of lading, and sought to have the goods delivered to Seitz; that the agent was then advised by Kendall that the goods were the property of Seitz, and it further appears from their testimony that the only reason the goods were not so delivered at that time was because the additional freight charge was not paid. The agent did in fact permit Seitz to take the horse upon the latter agreeing to return it upon the agent's demand.

If appellant placed its refusal solely on the ground that the additional freight was not paid, it would not now be permitted to better its hold and contend that Seitz was not entitled to the goods because the bill of lading was not assigned. It would be estopped so to do. (*Ohio and Mississippi Railway Co.* v. *McCarthy,* 96 U. S. 258.) Did the testimony of Seitz and Kendall, to which we have just referred, not appear in the record, the proposition under consideration would be the law of the case. With that evidence before the court

the proposition ignored an element in the case, an alleged fact which the evidence tended to establish, and was therefore properly refused.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*