ILLINOIS CENTRAL GULF RAILROAD COMPANY, Plaintiff-Appellee, *v.* SANKEY BROTHERS, INC., Defendant-Appellant.

Fourth District   No. 14998

Opinion filed December 29, 1978.—Rehearing denied January 26, 1979.

CRAVEN, J., dissenting.

Thomas W. Kelty, of Springfield, for appellant.

Paul E. Adami, of Mohan, Alewelt & Prillaman, of Springfield, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Can a railroad carrier collect for tariffs over and above prices quoted to and paid by a shipper?

Yes.

The trial court is affirmed.

Sankey Brothers often employed the Illinois Central Gulf as its carrier. Illinois Central Gulf (ICG) billed defendant on the basis of previous telephone quotations and it is undisputed that—prior to the instant dispute—Sankey Brothers promptly paid all the shipping bills.

On April 15, 1976, the railroad billed Sankey Brothers for unabsorbed switching charges incurred in the years 1973, 1974, and 1975. These charges result from the switching of railroad cars from ICG to other railroads and had not been included in the original bills paid by Sankey. Defendant refused to pay the switching costs and ICG filed suit seeking payment of the charges, and Sankey filed a counterclaim seeking damages for the amount it was injured in relying upon the original price quotations given by ICG. The trial court dismissed the counterclaim for failure to state a cause of action and later entered summary judgment in the amount of $25,547.85 plus costs for the plaintiff railroad.

■■■ On appeal, defendant contests the trial court's decision to dismiss the counterclaim and to enter summary judgment for the plaintiff. However, defendant's notice of appeal did not mention the dismissal of the counter-claim and that issue therefore is not properly before this court. *City of Chicago v. Baran* (1972), 6 Ill. App. 3d 29, 284 N.E.2d 320; *Scheffler v. Ringhofer* (1966), 67 Ill. App. 2d 222, 214 N.E.2d 575.

Turning to the summary judgment issue, section 57 of the Civil Practice Act states that summary judgment is available when there are no material facts in issue. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) Here, the plaintiff contends that summary judgment is proper because the defendant has admitted the existence of a specific tariff for switching cars and the absorption by the plaintiff of a part of those charges. Defendant has also admitted that it received shipments by the same railroad cars that were the subject of the switching charges.

Defendant, however, counters plaintiff's arguments by alleging: (1) that the doctrine of equitable estoppel prevents plaintiff from recovering the switching charges; and (2) that the plaintiff did not make a timely

demand for the switching charges. These two arguments merge into a single allegation that had defendant realized what the ultimate rate would be, it would have hired alternative carriers.

Such an argument is not persuasive. In conformance with the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 37, 38) carriers *must* collect the full charges imposed by tariffs. Obviously, this provision is to prevent any preference or discrimination among shippers.

Except for this general statutory bar mandating collection of full charges, there is a dearth—in fact, a near vacuum—of Illinois law on the subject. Plaintiff relies heavily on the 1905 decision of *Illinois Central R.R. Co. v. Seitz* (1905), 214 Ill. 350, 73 N.E. 585. There, the shipper prepaid certain freight charges. The charges included a tariff rate which was based upon the cargo classification. Subsequently, the classification was deemed to be incorrect and the carrier raised the charges to reflect the correct tariff. The shipper refused to pay and the railroad then sold the cargo in lieu of payment, thereby precipitating the lawsuit.

The supreme court held that had the shipper been solely at fault in causing the misclassification, then the railroad could retroactively charge the proper tariff. However, since the railroad freight agent observed the goods being loaded, the shipper alone could not be blamed for the misclassification. Therefore, the court decided that the railroad could not, *ex post facto*, hike the rate charges since its failure to charge the proper rate at the time the first bill was submitted was not the sole fault of the shipper.

We view *Seitz* as an extremely tenuous foundation for the defendant's argument. The *Seitz* decision has never been cited as controlling authority by any other appellate court and, in fact, has specifically been discounted as being against the weight of authority. (See *North German Lloyd v. Elting* (2d Cir. 1938), 98 F.2d 48.) Moreover, four years after its decision, the supreme court acknowledged that *Seitz* was somewhat inconsistent with the holdings of other jurisdictions. (*Kirby v. Chicago & Alton R.R. Co.* (1909), 242 Ill. 418, 90 N.E. 252, *rev'd on other grounds* (1912), 225 U.S. 155, 56 L. Ed. 1033, 32 S. Ct. 648.) In truth, in over 70 years *Seitz* has been cited only one other time by the supreme court—and then for a legal proposition totally foreign to the issue presented here. *Hooper v. Fox* (1936), 364 Ill. 613, 5 N.E.2d 217.

Therefore, in view of the policy enunciated in sections 37 and 38 of the Public Utilities Act, plus the antiquity of the *Seitz* case and lack of following engendered by the decision, we are convinced that *Seitz* should not be dispositive of the issue at hand.

Apparently, the only other Illinois authority on the subject is *Baxter v. Atchison, Topeka & Santa Fe Ry. Co.* (1941), 310 Ill. App. 616, 35 N.E.2d 563. There, plaintiff was a shipper claiming damages because he was

forced to pay additional charges upon delivery. The court held that the defendant was entitled to charge the proper tariff even if a different rate was originally quoted and that the plaintiff must allege and prove the charges were in excess of the legal tariff.

Defendant attempts to distinguish *Baxter* on the grounds that the decision involved an *interstate* shipment whereas the instant case deals with an *intrastate* shipment. In fact, defendant discounts the Interstate Commerce Act and the line of Federal cases which support the railroad's position as involving interstate as opposed to intrastate moves.

■■ Although we agree that the Interstate Commerce Act does not govern intrastate movements of commerce, the act and the Federal interstate cases are pertinent to an analysis of the instant appeal. We fail to discern how the fact that plaintiff's train did not pass over a State line makes any difference in the outcome of this case since the policy involved in the Interstate Commerce Act parallels that stated in the Illinois Public Utilities Act concerning the mandate that carriers must collect the full charges imposed by tariff so that no discrimination or preference will occur. 49 U.S.C. §§1004, 1014 (1970).

In addition, the Federal line of authority in this area is clear:

> " 'Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay.' " (*Louisville & Nashville R.R. Co. v. Maxwell* (1915), 235 U.S. 94, 98, 59 L. Ed. 853, 855, 35 S. Ct. 494, 496.)

See *Steele v. General Mills, Inc.* (1947), 329 U.S. 433, 91 L. Ed. 402, 67 S. Ct. 439; *United States v. Western Pacific R.R. Co.* (1956), 352 U.S. 59, 1 L. Ed. 2d 126, 77 S. Ct. 161; *City Messenger Service of Hollywood, Inc. v. Capitol Records Distributing Corp.* (6th Cir. 1971), 446 F.2d 6.

The fact that interstate travel was involved in the above cited cases does not dilute their persuasiveness in the instant factual setting.

Furthermore, it is clear that the defense of estoppel is not available in lawsuits of this kind. The Supreme Court has stated that regardless of the reliance upon the carrier's original shipping estimate, a carrier is entitled to the collection of the full amount of the published tariff. The court has stated:

> "Nor can the defendant in error successfully invoke the principle of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the act [Interstate Commerce Act] as to equal rates, in violation of the provisions of the statute." (*Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fink* (1919), 250 U.S. 577, 582-83, 63 L. Ed. 1151, 1153, 40 S. Ct. 27, 28.)

See *Steele.*

■ Recapitulation: A tariff is a law, not a contract, and has the force and effect of a statute. (See *City Messenger Service.*) The Illinois Commerce Commission tariffs are published and all parties have equal access to the tariff rates. To allow the defendant to be excluded from the payment of the full amount of the tariff would create a preference in violation of sections 37 and 38 of the Public Utilities Act. Instead, we feel that the intent of the Public Utilities Act is to obligate the shipper to pay the proper tariff regardless of the quoted shipping price.

Accordingly, since defendant must pay the applicable tariff and plaintiff has established the amount of the tariff that is due, there are no material issues of fact present and the trial court was correct in granting summary judgment.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:
If I were free to decide this case unfettered by precedent in this jurisdiction, I would agree with the majority opinion. The reasonable development of the law makes it necessary, however, that those of us who serve as judges of intermediate courts pay some attention to, and follow, the holdings of supreme court opinions. It does not matter that the supreme court opinion is old and unloved. We are supposed to follow it anyway.

I understand the state of the law in the vast majority of jurisdictions to be that a tariff filed and approved by the Commerce Commission or other similarly authorized regulatory body is binding upon the shipper and the carrier and there can be no deviation from such rates, even if the deviation is unintentional and certainly not if the deviation is designed to result in discrimination. The Federal rule is articulated in *Louisville & Nashville R.R. Co. v. Maxwell* (1915), 235 U.S. 94, 59 L. Ed. 853, 35 S. Ct. 494, and consistently applied. One need not recite State citations because they are collected and referred to in two annotations, 83 A.L.R. 245 (1933), and 88 A.L.R.2d 1375 (1963).

Illinois, by reason of the *Seitz* case, marches to a different drummer. There is no way to distinguish *Seitz*. We can try. We can say it is old. We can say it has not been cited with approval. We can say cases involving similar issues have ignored it. We can say that the Illinois Supreme Court itself in *Kirby v. Chicago & Alton R.R. Co.* (1909), 242 Ill. 418, 90 N.E. 252, referred to *Seitz* in something other than glowing terms. But the holding in *Seitz* is there, unimpaired, not overruled, and not distinguishable. That holding is upon facts not materially distinguishable from those here.

The *Seitz* case was decided in 1905, and the statute referred to related to the Interstate Commerce Commission. We are here concerned with the Illinois Commerce Commission. *Seitz* was decided prior to the adoption of sections 37 and 38 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, pars. 37, 38). Such minor matters provide us with no way around the holding of *Seitz*. The orderly development of the law is that we should follow it, indeed as we are bound to do so, and at the same time express to the supreme court that were we free to do otherwise, we would join the other jurisdictions. It does not serve the orderly development of the law to merely note that the case is old and unloved and thus ignorable.

I dissent.