**BULLARD'S OIL FIELD SERVICE, INC., Appellant/Cross–Appellee,**

v.

**WILLIFORD ENERGY COMPANY, Appellee/Cross–Appellant.**

No. 69512.

Supreme Court of Oklahoma.

April 18, 1989.

As Corrected May 9, 1989.

Rehearing Denied July 12, 1989.

LeVally and Pinkerton, P.C. by Earl E. LeVally, Healdton, for appellant, cross-appellee.

Holliman, Langholz, Runnels & Dorwart by Ronald E. Goins, Tulsa, for appellee, cross-appellant.

Dykeman, Williamson & Williamson, Inc. by Wilburn L. Williamson, and David B. Dykeman, Oklahoma City, for amicus curiae, Associated Motor Carriers of Oklahoma.

LAVENDER, Justice:

Appellant, Bullard's Oil Field Service, Inc., initiated this action seeking to recover money alleged to be due for services rendered to appellee, Williford Energy Company, for hauling and disposal of drilling fluids and for bulldozer work in the closing of a reserve pit following completion of drilling operations on a lease operated by appellee. Appellant alleged that appellee was indebted to it in the amount of $32,-007.95. In answer to appellant's petition appellee alleged that it had agreed with appellant that appellant would furnish all services necessary for the closing of the reserve pit for the sum of $13,800, and that appellant had failed to timely complete the services under the agreement. As affirma-

tive defenses appellee alleged that appellant knowingly and intentionally misled it concerning established rates for the hauling and disposal of deleterious substances and that appellant should therefore not be allowed recovery based on those rates. In the context of a counter-claim asserted by appellee, it was alleged that appellant had failed to disclose appellant's belief that these services could not be performed for less than the rates prescribed by the Oklahoma Corporation Commission.

This cause was tried to the trial court without a jury. Appellant presented evidence to show that it was a regulated carrier operating under permit from the Oklahoma Corporation Commission and was authorized to haul deleterious substances for disposal. Appellant presented the tariff rates approved for these services by the Corporation Commission which provided that the rate for services rendered in this case should have been $62.54 per hour per vehicle plus a disposal charge assessed per barrel of substances. Appellant also presented testimony to the effect that its principal, in entering into the agreement with the agent of appellee, had intended to give only an estimate of the costs of the services to be provided in the closing of the reserve pit.

At trial appellee presented testimony that it had solicited for bids to be made on the services for the closing of the pit, and that it was understood by the bidders that this was the amount to be paid for the services. Appellee's agent testified that appellant had submitted a bid in the amount of $13,800.

The trial court found that appellant and appellee had intended to enter into a fixed amount agreement for the closing of the reserve pit. This agreement was also found to be in violation of the laws of Oklahoma. The trial court therefore refused to enforce the contract and ruled that appellant could recover nothing for

any work performed under the illegal agreement.

On appeal appellant argues that the trial court erred in ruling that appellant could not recover the amount claimed for services rendered under the tariff schedule. Appellant presents two arguments for this result. The first is a question of law as to whether public policy prevents the result reached by the trial court. The second is presented as a challenge to the evidentiary basis of the trial court's result.[1] We find it necessary only to address the first argument as it is dispositive of the case.

The Oklahoma Legislature has presented a clear statement of public policy in regard to the regulation of motor carriers such as appellant. At 47 O.S. 1981 § 161,[2] it is provided:

It is hereby declared that it is necessary in the public interest to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in such transportation and among such carriers; promote adequate, economical, efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages and unfair or destructive competitive practices; develop and preserve a highway transportation system properly adapted to the agricultural, industrial and commercial needs of the commerce of the State of Oklahoma and the national defense; and cooperate with the government of the United States, the departments of the State of Oklahoma, regulatory bodies of other states, and the duly authorized officials thereof and with any organization of motor carriers in the administration and enforcement of this act.

. . . .

In 47 O.S. 1981 § 162 the Legislature set forth the powers of the Corporation Commission to regulate motor carriers, stating:

1. Appellee has also filed a cross-appeal challenging the trial court's refusal to award it attorney fees as the prevailing party below. Since the cause must be reversed and remanded we deem it unnecessary to address the cross-appeal.

2. Amendment to § 161 by 1988 Okla.Sess.Laws, Ch. 287 § 8, did not affect the statement of policy.

The Corporation Commission is hereby vested with power and authority, and it shall be its duty: (1) to supervise and regulate every motor carrier whether operating between fixed termini or over a regular route or otherwise and not operating exclusively within the limits of an incorporated city or town in this state; (2) to fix or approve the maximum or minimum, or maximum and minimum rates, fares, charges, classifications and rules and regulations pertaining thereto, of each motor carrier; (3) to regulate and supervise the accounts, schedules and service of each such motor carrier; and for the conservation of the public highways; (4) to prescribe a uniform system and classification of accounts to be used, which among other things shall set up adequate depreciation charges, and after such accounting system shall have been promulgated, motor carriers shall use no other; (5) to require the filing of annual reports, and other data as required from time to time by the Commission; and (6) to supervise and regulate motor carriers in all other matters affecting the relationship between such carriers and the traveling and shipping public. The Commission shall have the power and authority by general order or otherwise to prescribe rules and regulations applicable to any or all motor carriers. All regulatory power and authority over transportation and transmission companies now vested in the Commission is hereby specifically extended to include all motor carriers.

At 47 O.S. 1981 § 163(G) the Legislature enacted a provision specifically applicable to the present case:

It shall be the duty of every contract carrier by motor vehicle to establish and observe reasonable actual rates and charges, which shall not be lower than the published common carrier rates and charges, for any service rendered or to be rendered in the transportation of property or in connection therewith, and to establish and observe reasonable regulations and practices to be applied in connection with said reasonable actual rates and charges. It shall be the duty of every contract carrier by motor vehicle to file with the Commission, publish, and keep open for public inspection, in the form and manner prescribed by the Commission, schedules containing the actual rates or charges of such carrier actually maintained and charged for the transportation of property in intrastate commerce, and any rule, regulation, or practice affecting such rates or charges and the value of the service thereunder. No such contract carrier, unless otherwise provided by this act, shall engage in the transportation of property in intrastate commerce unless the actual charges for such transportation by said carrier have been published, filed and posted in accordance with the provisions of this act. No change shall be made in any such charge either directly or by means of any change in any rule, regulation, or practice affecting such charge or the value of service thereunder, except after thirty (30) days' notice of the proposed change filed in the aforementioned form and manner; but the Commission may, in its discretion and for good cause shown, allow such change upon less notice, or modify the requirements of this paragraph with respect to posting and filing of such schedules, either in particular instances, or by general order applicable to special or peculiar circumstances, or conditions. Such notice shall plainly state the change proposed to be made and the time when such change will take effect. *No such carrier shall demand, charge, or collect a different compensation for such transportation than the charges filed in accordance with this paragraph, as affected by any rule, regulation, or practice so filed, or as may be prescribed by the Commission from time to time, and it shall be unlawful for any such carrier, by the furnishing of special services, facilities, or privileges, or by any other device whatsoever, to charge or accept other than the charges so published and filed.*

(emphasis added)

There has been no challenge presented by appellee in this case to the effectiveness of the tariffs governing the services provid-

ed by appellant. The argument presented by appellee is that the tariffs may not be enforced because of appellant's fraud or neglect in failing to inform appellee that the services provided would be governed by these tariffs, and that the trial court correctly found that appellant could gain no benefit from the resulting illegal contract.

■ Although this question has never been presented to this Court we find that the question of law appears to be well settled in cases applying the federal Interstate Commerce Act and in other areas involving intrastate regulation under provisions similar to the cited Oklahoma law. The common policy embodied in these regulatory schemes is, like the pronouncement in § 161, the promotion of adequate, economical and effecient service at reasonable cost without discrimination, undue preferences or advantages, or unfair or destructive competitive practices.[3] To the end of enforcing this policy the courts have consistently held that the tariff rates are incorporated by operation of law as a part of any agreement for services subject to the tariffs, and that both the shipper and the carrier are equally charged with knowledge of the legal effect of the tariffs.[4] Because the expressed public policy requires that these rates be charged and paid to prevent any shipper from receiving undue advantage or unjust burden the defenses of in pari delicto and estoppel are held to be inapplicable in a suit to recover charges pursuant to the tariffs.[5] The question of the legality of the contract is also deemed irrelevant as the duty to pay arises out of public policy as well as out of the contract.[6]

To allow the trial court's disposition of this matter to stand would allow appellee to gain an undue benefit as a result of its avowed ignorance of Oklahoma law applicable to operations essential to its chosen field of business.

·Appellee also argues that the trial court's ruling in this case should not be disturbed because: 1) the issue of the validity of its asserted defenses of in pari delicto and estoppel were not presented at trial; and 2) it would be unfair to apply a policy pronouncement of the kind relied on by other courts in finding a carrier liable for tariff rates in similar cases retrospectively in this case. We find no merit in either position.

The issue presented to the trial court here was clearly whether the parties were bound by the published tariff rates for appellant's services. The cases cited by appellee in support of its position that appellant should not be allowed to present this argument on appeal clearly deal with situations where it was attempted to present an issue on appeal which was not presented to the trial court.[7] The issue now on appeal is the exact issue properly before the trial court.

■ We further find no reason to give the present opinion purely prospective effect. This is not a question of a judicial pronouncement of policy or a reinterpretation of previously announced policy. The present result is dictated by giving effect in this case to public policy clearly stated by the Legislature and existing as part of

---

3. See *Steele v. General Mills, Inc.,* 329 U.S. 433, 67 S.Ct. 439, 91 L.Ed. 402 (1947) (applying Texas law); *Aero Trucking, Inc. v. Regal Tube Co.,* 594 F.2d 619 (7th Cir.1979) (applying federal law); *Illinois Central Gulf R.R. v. Sankey Brothers, Inc.,* 67 Ill.App.3d 435, 23 Ill.Dec. 749, 384 N.E.2d 543 (1978), affirmed, 78 Ill.2d 56, 34 Ill.Dec. 328, 398 N.E.2d 3 (1979) (applying Illinois law).

4. *Louisville & Nashville Railroad Co. v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); *Aero Trucking, Inc. v. Regal Tube Co.,* supra; *Illinois Central Gulf R.R. v. Sankey Brothers, Inc.,* supra; *Indiana Harbor Belt R.R. v. Budd Company,* 110 Ill.App.3rd 76, 65 Ill.Dec. 787, 441 N.E.2d 1301 (1982).

5. *Steele v. General Mills, Inc.,* supra; *Louisville & Nashville R.R. Co. v. Maxwell,* supra; *Aero Trucking, Inc. v. Regal Tube Co.,* supra; *Indiana Harbor Belt R.R. v. Budd Co.,* supra; *G.M.W., Inc., v. Certified Parts Corp.,* 135 Wis.2d 503, 400 N.W.2d 512 (Ct.App.1986).

6. *Steele v. General Mills, Inc.,* supra.

7. *General Motors v. Okla. County Bd. of Equalization,* 678 P.2d 233 (Okla.1983); *Mills v. Mills,* 512 P.2d 143 (Okla.1973); *Home–Stake Production Co. v. Minnis,* 443 P.2d 91 (Okla.1968).

the regulatory scheme covering the operations of both appellant and appellee.

The trial court's ruling that appellant could not recover the amount set by the tariffs for the services rendered must be reversed. Because the recovery sought by appellant, however, includes aspects of the agreement of the parties not subject to the tariffs, such as the bulldozer work in closing the reserve pit, the cause must be remanded for a new trial to determine the proper amount due appellant for services rendered subject to the tariffs and to determine the parties' dispute as to the additional terms of the agreement.

*REVERSED* and *REMANDED.*

All the Justices concur.