**BULLARD'S OIL FIELD SERVICE, INC., Appellant/Cross Appellee,**

v.

**WILLIFORD ENERGY COMPANY, Appellee/Cross Appellant.**

**No. 76006.**

Supreme Court of Oklahoma.

Sept. 15, 1992.

Rehearing Denied Oct. 28, 1992.

Earl LeValley, Healdton, for appellant.

Ronald Goins, E. Marcus Barcus, Tulsa, for appellee.

ALMA WILSON, Justice.

This appeal is from a judgment of the trial court which heard the cause upon remand from a prior appeal, *Bullard's Oil Field Service, Inc. v. Williford Energy Company,* 775 P.2d 802 (Okla.1989). The appellant, Bullard's, which is a regulated common carrier, filed an action alleging that the appellee, Williford, was indebted to it in the amount of $32,007.95 for hauling and disposing of drilling fluids in addition to bulldozer work required to close a reserve pit on a lease operated by appellee. The trial court found the parties had orally agreed to a fixed price for the closing of the pit and that this agreement was in violation of the laws of Oklahoma. The trial court refused to enforce the agreement and ruled that Bullard's could recover nothing for its services. On appeal, this Court reversed and remanded the judgment of the trial court and held that the parties were bound by the published tariff rates for Bullard's services. The trial court was directed to determine the proper amount due appellant for services rendered, subject to the tariffs, and to determine the parties' dispute as to the bulldozer work.

Upon remand, the trial court found that one invoice dated August 25, 1985, was the most significant piece of evidence regarding how many barrels of fluid had been hauled from the reserve pit. This invoice states that Bullard's "Furnished transports w/operators to haul reserve pit to disposal. 160 hrs. (at) $62.54 = $10,006.40 (and) 12,-000 bbl. (at) $.30 = $3,600.00." The total dollar amount on the invoice is $13,606.40. The court then directed each party to pay half of the TAW, Inc. bulldozer fee of $3,085.00. The court deducted Bullard's

share of the bulldozer work from the $13,-606.40 that it had been awarded, and judgment was then entered for Bullard's in the amount of $12,063.90. Bullard's appeals this judgment.

■ Upon appellate review, if there is any competent evidence to support the judgment of the trial court then the judgment will stand. *Wells v. Loveless Manufacturing Corp.*, 392 P.2d 381, 384 (Okla.1964). But when there is no evidence to support the judgment, the decision will be set aside. *First Nat'l. Bank & Trust Co. v. Muskogee Discount House*, 382 P.2d 137, 139–140 (Okla.1963); *Dunlap v. Jeffrey*, 260 P.2d 1072, 1075 (Okla.1953). We find that the judgment entered is unsupported by any evidence and must be reversed.

On remand, Bullard's offered considerable evidence to support their claim that they had indeed hauled 17,720 barrels of fluid from the reserve pit. In addition to testimony from Bullard's area manager and the vice president/general manager, Bullard's introduced into evidence, without objection from Williford, such documents as load tickets,[1] field tickets,[2] and invoices.[3] This evidence shows that Bullard's Oil Field Service hauled a total of 17,720 barrels of fluid between October 1, 1984, and approximately September 30, 1985. At the rate set by the Corporation Commission, the number of barrels of fluid alleged to be hauled by Bullard's would result in a total cost to Williford of $28,507.95.[4] Williford

offered statistical evidence including weather data and charts of the site of the reserve pit to show that Bullard's could not have hauled the amount of fluid claimed.

■ This Court clearly stated that the public policy embodied in the common carrier statutes of this state is to promote "adequate, economical and efficient service at reasonable cost without discrimination, undue preferences or advantages, or unfair or destructive competitive practices."[5] The power to establish these rates is clearly vested in the Corporation Commission and not in the judicial system.[6] Unless the rate itself is being challenged, the courts are not free to establish different rates, or to disregard them altogether. Such an ability would fly in the face of the purpose of the existing statutes giving that power exclusively to the Corporation Commission.[7]

■ The only dispute that exists in this case is *how many* barrels of fluid were actually hauled by Bullard's for Williford. The trial court decided that the invoice dated August 25, 1985, was significant because it was a "claim made by plaintiff in 1985 and prior to invoices totaling $28,-507.95 dated March 7, 1986." Testimony revealed that this particular invoice was fabricated by an employee of Bullard's in order to be consistent with the bid that had been given to Williford. This particular invoice was given to a field representative of Williford in 1985. This field representative, in his testimony in the trial on remand, testified that he was aware that this

1. Testimony establishes that a load ticket is carried in the truck and filled in by the driver. The ticket describes where the load originated and where it is taken. The load ticket is required by the Corporation Commission and is kept by the driver of the truck from the time he picks up the load until the time that it is disposed. Testimony also establishes that these load tickets are usually turned in every day by the drivers because the billing is done based on the information contained in them. (Transcript pages 9–11.)

2. Testimony establishes that a field ticket is generated by Bullard's McAlester office. The information on the field ticket comes directly from the load tickets. (Transcript pages 11–12.)

3. Testimony establishes that the invoices are handled by Bullard's Wilson office. This docu-

ment, made from the information on the field tickets, is sent to the customer. (Transcript pages 12–13.)

4. The rate at which the barrels of fluid were hauled was $62.54 per hour. This rate was promulgated by the Corporation Commission. Disposal rates are not regulated by the Corporation Commission and vary depending upon which disposal site is used.

5. *Bullard's Oil Field Service v. Williford Energy*, 775 P.2d 802, 805 (Okla.1989). (Footnote Omitted)

6. See footnote 1.

7. *Id.*

invoice was fabricated to match the bid. Such a result is contrary to the instructions and reasoning given by this Court when the matter was sent back to be decided properly. The trial court abused its discretion in reaching this decision, and based upon the facts and reasoning stated herein, we reverse the trial court's decision and again remand for the trial court to determine the number of barrels of fluid Bullard's hauled for Williford and the number of hours taken to haul the fluid. The trial court is to make the mathematical calculation multiplying the number of hours times $62.54 per hour and the number of barrels hauled at thirty cents per barrel. The sum of these two calculations is to be awarded in judgment to Bullard's.

■■■■ A TAW, Inc., bulldozer was used to close the pit. The trial court found that the parties should share equally in the expense of the bulldozer work performed by TAW. There was no testimony that the parties had agreed to split the bulldozer fee. Bullard's argues that the trial court erred in splitting the TAW bill. Williford asserts that the trial court judgment was proper.

Bullard's hired a bulldozer operator named John Collums who worked on closing the pit while Bullard's trucks hauled and disposed of the fluid. Mr. Collums testified that at the end of the job he had some top soil to finish out, but he did not do it because when he got to the site there was someone else doing the work; and that he recognized the company as TAW. Collums testified that he would have finished his bulldozer work on the pit *but for* TAW being on the location when he arrived. Neither party admitted hiring the bulldozer that is the subject of the dispute. Williford argues that even though they paid the bill from TAW when it was received, they did so only to prevent damage to their ongoing relationship with TAW, and they still considered it to be Bullard's responsibility.

This Court ordered the trial court to determine the terms of the agreement regarding the bulldozer work in closing the reserve pit. There is no evidence that the parties agreed to split the TAW bill. This

Court will not disturb factual findings of a trial court if there is any evidence reasonably tending to support the trial court's judgment. *Tice v. Tice,* 672 P.2d 1168, 1171 (Okla.1983). Because there is no evidence to support the trial court's judgment concerning splitting the TAW bulldozer bill, we reverse and remand the judgment and instruct the trial court to determine the parties' agreement concerning the TAW bulldozer bill. If the findings of the court reveal that the bulldozer fee was the responsibility of Bullard's, the $3,085.00 expense is to be subtracted from the amount awarded to Bullard's. If the trial court finds that Williford hired TAW to finish the work and that Williford was without authority under the agreement to bring in another bulldozer to finish the pit, then none of the TAW bill is to be deducted from Bullard's judgment. If the facts reveal that under contract law Williford was entitled to bring in TAW to finish closing the pit, but that TAW performed additional work that was not part of the agreement between Bullard's and Williford, the trial court may divide the bulldozer expense according the proportion that is the responsibility of the parties. The judgment must be supported by the evidence presented.

In the first appeal Williford cross-appealed challenging the trial court's refusal to award it attorney fees as the prevailing party. This Court held that addressing the subject of attorney fees was unnecessary because the case had to be reversed and remanded. *Bullard's Oil Field Service,* 775 P.2d at 803. After the second trial Bullard's petitioned the trial court for attorney fees. For the first and second trials, the first appeal and the attorney fee hearing, Bullard's asked for over $56,000.00. The court awarded attorney fees of $25,180.00 for 629.5 hours of attorney time, trial costs of $52.00 and expenses of $709.59, for a total judgment of $25,941.59. Williford questions whether Bullard's properly preserved the issue of attorney fees in the first appeal and whether the trial court had the authority to grant attorney fees for the first trial and the first appeal. Williford also argues that because of certain

offers to settle the case with Bullard's that Williford is actually the prevailing party.

 Title 12 O.S.1991, § 936[8] provides that the prevailing party in an action to recover for labor and services shall be allowed a reasonable attorney fee. *Kay v. Venezuelan Sun Oil Co.*, 806 P.2d 648, 650 (Okla.1991). The agreement between Bullard's and Williford that Bullard's would haul and dispose of drilling fluids from the reserve pit is an agreement for labor and services and accordingly fits within § 936 allowing the prevailing party to recover attorney fees. "The prevailing party is the party who has an affirmative judgment rendered in his favor at the conclusion of the entire case." *The Company, Inc. v. Trion Energy*, 761 P.2d 470, 471–472 (Okla.1988). The determinative question is whether there was a prevailing party at the end of the first appeal. The first appeal resulted in a remand, a new hearing and a new judgment. At the end of the first appeal there was no prevailing party because neither party had an affirmative judgment.[9] At the conclusion of the second trial, Bullard's was awarded a money judgment. At that time Bullard's became the prevailing party. *Rambo v. Hicks*, 733 P.2d 405 (Okla.1986). When Bullard's had been awarded a money judgment, the trial court correctly decided the issue of attorney fees.

There are exceptions to the general rule that the party to whom an affirmative judgment has been rendered is entitled to attorney fees. *The Company, Inc.*, 761 P.2d at 472. One of those exceptions is provided by 12 O.S.1991, § 1101[10] regarding offers to settle. Williford has stated that it has made two offers to settle and premises its argument concerning a right to attorney fees on its offers to settle. We need not determine whether this case fits within the § 1101 exception as the case must be remanded. After the trial court has determined the number of barrels hauled and the hours Bullard's hauled the barrels and has awarded judgment to Bullard's based upon those hours, the court shall consider the general rule stated above and the applicable exceptions and award attorney fees accordingly.

JUDGMENT OF TRIAL COURT REVERSED AND REMANDED.

HODGES, V.C.J., and LAVENDER, HARGRAVE, KAUGER, SUMMERS and WATT, JJ., concur.

OPALA, C.J., concurs in part, dissents in part.

SIMMS, J., dissents.

---

8. 1970 Okla.Sess.Laws, ch. 282, § 1.

9. One who receives an affirmative judgment is one who has prevailed on the merits. Even when a plaintiff receives a judgment by confession that plaintiff becomes a prevailing party for the purpose of 12 O.S.1991, § 936. The plaintiff has succeeded. *Wieland v. Danner Auto Supply*, 695 P.2d 1332, 1334 (Okla.1984).

10. The statute has remained unchanged since 1910. R.L.1910, § 5301.