2002 OK CIV APP 82

**BANK OF OKLAHOMA, N.A.,**
**Plaintiff/Appellant,**

v.

**KROWN SYSTEMS and James**
**Krone, Defendant,**

and

**Convenient Fuel Group, L.L.C.,**
**Garnishee/Appellee.**

No. 95,746.

Court of Civil Appeals of Oklahoma,
Division No. 2.

March 12, 2002.

Publication Ordered June 7, 2002.

Stephen L. Bruce, Oklahoma City, OK, for Plaintiff/Appellant.

James E. Dunn, Oklahoma City, OK, for Garnishee/Appellee.

Opinion By TOM COLBERT, Presiding Judge.

¶ 1 Bank of Oklahoma, N.A. (Bank), acting as trustee, appeals a judgment in favor of Convenient Fuel Group, L.L.C. (Garnishee) on its garnishment action. The issue on appeal is whether the trial court erred in exercising its equity power to hold that Garnishee was not liable for funds it erroneously paid to Krown Systems (Debtor) before its new owners received actual notice of the garnishment. We conclude that the trial court did err, reverse its judgment, and remand for the entry of judgment in accordance with this opinion.

¶ 2 Bank is the trust company administering the estate of M.B. Galloway, deceased. Acting as trustee, it obtained a judgment for approximately $30,000 against Debtor on a

promissory note. Bank determined that Debtor had a contractual relationship with Garnishee, a foreign corporation doing business in Oklahoma, and filed a continuing garnishment against Garnishee to attach any funds that were due or to become due within 180 days from Garnishee to Debtor.

¶ 3 Bank served Garnishee on January 6, 2000, by serving its registered Oklahoma service agent. Garnishee did not answer. Thereafter, Bank obtained an order from the trial court for Garnishee to answer and served the order on Garnishee's registered service agent. Garnishee failed to respond to the order and, on March 22, 2000, the trial court entered a default judgment against it for $32,459.57.

¶ 4 Garnishee filed a motion to vacate the judgment on April 18, 2000, arguing that its owners had only recently received actual notice of Bank's garnishment action. The trial court granted Garnishee's motion and vacated the default judgment. It ordered Garnishee to file an answer, provide Bank copies of checks issued to Debtor, and forward to Bank funds currently owed to Debtor in satisfaction of the garnishment.

¶ 5 In its initial answer, Garnishee admitted paying Debtor $15,904.66 after the garnishment was originally served on the service agent but before the new owners received actual knowledge of the garnishment.[1] In response, Bank filed an amended notice of election to take issue with Garnishee's answer and a motion for summary judgment against Garnishee for $15,904.66. Following a hearing, the trial court concluded that it would not be equitable to hold Garnishee liable for the funds, denied Bank's election to take issue with Garnishee's answer, and granted judgment in favor of Garnishee. Bank appeals.

## STANDARD OF REVIEW

¶ 6 There being no dispute as to the material facts, we are presented first with a question of law: whether the trial court had the equitable power to waive the effect of the garnishment. Questions of law are reviewed de novo. *Clayton v. Fleming Cos.*, 2000 OK 20, ¶ 11, 1 P.3d 981, 984. If we determine the court had equitable power, then we "must examine the entire record and weigh the evidence to determine whether the judgment is against the clear weight of evidence, or contrary to law or established principles of equity." *Union Oil Co. of Cal. v. Jackson*, 1971 OK 128, ¶ 6, 489 P.2d 1073, 1074. If we determine that the trial court's judgment in an equity case was in error, we may "render or cause to be rendered the judgment that should have been rendered by the trial court." *Sinclair Oil & Gas Co. v. Bishop*, 1967 OK 167, ¶ 0, 441 P.2d 436, 439 (syl. no. 9 by the court).

## DISCUSSION

¶ 7 There is no dispute that Bank, acting as trustee, had a judgment against Debtor for approximately $30,000; that Garnishee, a foreign corporation doing business in Oklahoma, had a contractual relationship with Debtor wherein it paid Debtor a $5,000–per–month retainer; and that any funds Garnishee owed Debtor could be garnished to satisfy Bank's judgment. There is also no dispute that Bank properly filed a continuing garnishment action against Garnishee and, on January 6, 2000, obtained service of process on Garnishee's registered Oklahoma service agent as provided by law.

¶ 8 The present owners purchased Garnishee in October 1999. The former owners had previously chosen an Oklahoma agent, but the new owners assert they did not know about that choice or the need to register an Oklahoma agent. Whatever the reason, the new owners did not notify the Oklahoma agent of the change of ownership. When it received the garnishment summons, the agent forwarded the summons to an individu-

---

1. Although Bank does not argue this point on appeal, Garnishee's answers acknowledge receiving the garnishment summons on March 5, 2000, more than two weeks before the entry of default judgment and one month before Garnishee made its last payment to Debtor of $5,000, which occurred on April 4, 2000. While this acknowledgment of service may not actually indicate when Garnishee's new owners knew about the garnishment (it is written in different ink than the remainder of the answer form), it is the only thing in the record that puts a date on that knowledge and is on a form executed by Garnishee's executive vice president.

al who was no longer an officer with Garnishee. Garnishee's current owners apparently did not receive the paperwork until after the entry of the default judgment.[2]

¶ 9 Bank does not assert on appeal that the trial court erred in vacating the default judgment, as it acknowledges that default judgments are disfavored. *See Feely v. Davis,* 1989 OK 163, ¶ 16, 784 P.2d 1066, 1070. Bank argues, however, that the trial court erred in refusing to grant judgment against Garnishee for the $15,904.66 Garnishee paid to Debtor after the date of service on Garnishee's Oklahoma agent. Garnishee contends the trial court properly invoked its equity power to determine that it would not be equitable to hold Garnishee liable to Bank for the money it erroneously paid to Debtor after the date of the original service but before the new owners received actual notice.

¶ 10 Bank claims it was entitled to the funds because it had a valid lien that commenced January 2, 2000. A continuing garnishment summons becomes a lien on the debtor's property held by the garnishee upon the date of service and for 180 days thereafter or until the debt is paid. 12 O.S. Supp. 2000 § 1173.4(G); *see also DPW Employees Credit Union v. Tinker Fed. Credit Union,* 1996 OK CIV APP 106, ¶ 8, 925 P.2d 93, 95. Garnishee contends the lien does not apply because it did not have actual notice until its new owners knew about the garnishment.

¶ 11 Bank contends Garnishee had actual notice of the garnishment on January 6, 2000, when its Oklahoma agent was served. Bank asserts that the fact that Garnishee's new owners did not know about the garnishment until later is not determinative because Garnishee, as a corporation, "is a legal entity separate and apart from its stockholders, individually or as a body." *State ex rel. Okla. Employment Sec. Comm'n v. Tulsa Flower Exch.,* 1943 OK 109, ¶ 13, 135 P.2d 46, 48. Service is obtained on a corporation, foreign or domestic, by:

> delivering a copy of the summons and of the petition to an officer, a managing or general agent, or to any other agent autho-

rized by appointment or by law to receive service of process. . . .

12 O.S. Supp.2000 § 2004(C)(1)(c)(3). Before it may transact business in Oklahoma, a foreign corporation must submit an application with the Secretary of State containing, among other things, "the name and street address of a registered agent in this state . . . to accept service of process and otherwise perform the functions of a registered agent." 18 O.S. Supp.2000 § 2043(3)(c). A foreign corporation doing business in Oklahoma has a continuing obligation to inform the Secretary of State of any change in its registration or its withdrawal. 18 O.S. Supp. 2000 §§ 2046–47.

¶ 12 Garnishee contends it did not inform the Oklahoma agent of the change in ownership because it did not know it had or needed an Oklahoma agent. Oklahoma courts are generally unswayed by a corporation's claim that it did not fulfill a statutory duty because its officers did not know about it. The Court of Civil Appeals has explained:

> [C]orporate directors and officers are presumed to know that which it is their duty to know and about which they have the means of knowing . . . . Or to state it another way the officials are bound to know what they ought to know and would have known by proper attention to their business.

*Preston–Thomas Constr. Inc. v. Cent. Leasing Corp.,* 1973 OK CIV APP 10, ¶ 8, 518 P.2d 1125, 1127 (citation omitted); *see also Bullard's Oil Field Serv., Inc. v. Williford Energy Co.,* 1989 OK 63, ¶ 8, 775 P.2d 802, 805 (explaining that a corporation may not "gain an undue benefit as a result of its avowed ignorance of Oklahoma law applicable to operations essential to its chosen field of business").

■ ¶ 13 Garnishee relies on *Shamblin v. Beasley,* 1998 OK 88, ¶ 13, 967 P.2d 1200, 1210, which states, "It is the totality of circumstances—not the particular norms of statutory requirements—that dictates the quality of service necessary to safeguard an individual's property interest at stake." (Emphasis omitted.) We conclude that the

---

**2.** See footnote 1.

totality of the circumstances is such that Garnishee did receive proper notice and that a lien did attach to the funds it owed Debtor on January 6, 2000, or came to owe Debtor in the ensuing 180 days.

¶ 14 Nevertheless, Garnishee contends equity requires that it not be held liable for the money it paid to Debtor after January 6, 2000, but before its new owners knew about the garnishment. Bank argues that, because the parties' rights were clearly defined by the garnishment laws, the trial court did not have the power to invoke equity to set aside Garnishee's liability. *Sautbine v. Keller*, 1966 OK 209, ¶ 13, 423 P.2d 447, 451 ("[E]quity follows the law."). We agree with Bank; the garnishment statutes are clear and Bank took all the required steps to invoke its lien on the funds in Garnishee's control. "[W]here the rights of parties are clearly defined by law equity has no power to change or unsettle such rights." *Id.* at ¶ 14, 423 P.2d at 451. Moreover, even if the trial court did properly invoke equity, we conclude that the equities of this particular case lie with Bank, because Bank did everything properly, while Garnishee neglected its duty to keep the state and its agent apprized of its status.

¶ 15 Certainly, equity has been invoked in garnishment actions to set aside a default judgment where there was only a technical failure to comply with the statute. For example, where a garnishee filed its answer one day late, but before a default judgment was filed and the default judgment was taken with no notice to the garnishee, the default judgment was properly vacated. *B & C Invs., Inc. v. F & M Nat'l Bank & Trust*, 1995 OK CIV APP 106, ¶ 7, 903 P.2d 339, 342 (explaining that garnishment statute, 12 O.S. § 1179, despite using the word "shall," does not require that a default judgment be entered when the garnishee files its answer one day late; equity can intercede). Another example is found in *Davis v. Meno Guar. Bank*, 1992 OK CIV APP 27, 836 P.2d 1305, where a trial court erred in entering a default judgment when the garnishee promptly completed the garnishee answer and sent a copy to the judgment debtor, but neglected to file a copy with the court until it received notice of the motion for default judgment.

¶ 16 Garnishee relies on *Davis* to argue that equity was correctly invoked in this matter. Certainly, in *Davis*, the court stated:

[garnishment] proceedings should be governed by equitable principles to the end that no unwarranted vexation or expense be inflicted upon the garnishee. And the Courts will protect him from the payment of another's debts unless under the law he is clearly liable.

*Id.* at ¶ 9, 836 P.2d at 1307 (quoting *Mulkey v. Morris*, 1957 OK 168, ¶ 14, 313 P.2d 494, 503). However, *Davis* addressed the situation where the garnishee was going to be held liable, through default judgment, for the *entire* garnishment amount without any showing that it had wrongly or mistakenly released any garnished funds to the judgment debtor. To hold the garnishee liable under those facts would surely have inflicted an "unwarranted vexation ... upon the garnishee." *Id.*

¶ 17 We are faced with a different scenario here. Bank is not seeking to hold Garnishee liable for funds it may never have held. Garnishee released $15,904.66 that was originally payable to Debtor, but to which Bank had a valid claim. Moreover, we note with interest that Garnishee's answers, filed by the new owners, stated that it received notice on March 5, 2000, even though Garnishee paid the last $5,000 to Debtor on April 4, 2000.[3]

¶ 18 Even if equity can apply here, there is another maxim of equity that compels our result. In *Sautbine*, 1966 OK 209, ¶ 14, 423 P.2d at 451, the Supreme Court recognized that "[e]quity cannot be invoked when its aid becomes necessary through a party's own fault." Here, Bank, acting as a trustee, did everything it was directed to do by the statutes, with the goal of affording Garnishee *actual* notice of the garnishment proceeding. Bank's efforts were unavailing, not because of any failure on Bank's part, but because Garnishee's new owners had failed to carry out their duty to appoint and/or keep

3. See footnote 1.

an agent in Oklahoma informed of the corporation's status. Garnishee's failure has created this situation; it cannot invoke equity to relieve itself of the burden created by its own negligence.[4] The Supreme Court has stated:

> A court of equity, looking beyond the mere form of things to their substance, has power to decree such relief to the parties as appears just and right, and as best calculated to protect their rights under the situation presented by the record.

*Foster v. Hoff,* 1913 OK 216, 37 Okla. 144, 131 P. 531 (syl. no. 2 by the Court).

¶ 19 Bank obtained service on Garnishee's Oklahoma agent and, as a result, had a valid lien on any funds Garnishee owed to Debtor on January 6, 2000, or at any point thereafter for 180 days. Garnishee, as the result of its own negligence, mistakenly released $15,904.66 to Debtor rather than to Bank. As a matter of both law and equity, it is proper that the burden of Garnishee's negligence rest upon Garnishee, rather than upon Bank. Therefore, we reverse the trial court's judgment and remand for the entry of a judgment for $15,904.66 in favor of Bank and against Garnishee. *See Sinclair Oil,* 1967 OK 167, ¶ 0, 441 P.2d at 439.

¶ 20 REVERSED AND REMANDED.

RAPP, J., and GOODMAN, J., concur.

---

4. This maxim should not be confused with the "clean hands" doctrine. Garnishee cannot equitably be held liable under the clean hands doctrine because it has engaged in no wrongdoing vis-a-vis Bank. *See Kunze v. Wilkerson,* 1967 OK 32, ¶ 13, 426 P.2d 340, 342 ("[T]he clean hands maxim is confined to misconduct in regard to, or at all events in connection with, the matter in litigation, so that it in some way affects the equitable relations subsisting between the two parties and arising out of the same transaction; that this maxim means a clean record with respect to the transaction with defendant, and not with respect to any third person.").